Oscar C. FLOWERS and Eloise Flowers,
Plaintiffs in Error,

v.

Era I. Cale STANLEY, Norman Clyde Cale,
Leland Victor Cale and Donnelta Elizabeth
Cale Hampton, Defendants in Error.

No. 37389.

Supreme Court of Oklahoma.

Oct. 15, 1957.

Hughes, Ogden & Ogden, Guymon, for plaintiffs in error.

King & Foster, Guymon, for defendants in error.

BLACKBIRD, Justice.

This case involves the right of defendants in error, who, as grantors, executed a deed dated August 11th, 1944, conveying to one of the plaintiffs in error, Oscar C. Flowers, two half sections of land, and reserving unto themselves an undivided one-half interest in the minerals under said land, to have the reserving part of said deed reformed. The material facts are not in serious dispute and are substantially as hereinafter related.

The defendant in error, Mrs. Era I. Cale Stanley is the remarried widow, and the other defendants in error are the surviving adult children, of Era I. Cale, who died previous to 1935, in Texas County, Oklahoma, where the land is situated. In said year, said widow and children, hereinafter referred to collectively as plaintiffs, moved from there to San Bernardino, California. In 1939, Mrs. Stanley, then Cale, discovered that said land was in danger of being sold for delinquent taxes, and, on a trip back to Oklahoma, was successful in selling an agricultural lease on it to one Oscar C. Flowers, a lawyer and farmer-stockman of Perryton, Texas, for a total rental amounting to more than enough to pay the taxes and save the land from delinquent tax sale. In December, 1943, just before this five-year agricultural lease expired, Flowers wrote Mrs. Stanley, at San Bernardino, asking her if she would be interested in selling the land to him. About three months later, Mrs. Stanley made another trip back to Oklahoma, and, while in Texas County, entered into negotiations with Flowers to sell him the land, less one-half of the minerals, for a consideration of $8,000, contingent upon the children in California approving, and joining with her, in the conveyance of their undivided interests.

Previously, one of the Cale children had died subsequent to his father's death, and two of the other three had married. Consequently, Mrs. Stanley's agreement with

Mr. Flowers contemplated that court proceedings would be had in order to place of record, ownership of the entire fee simple title to the land in Mrs. Stanley and her one surviving daughter and two sons. Before she left Guymon, the Texas County Seat, to return to California, she engaged Attorney L of that city to handle said proceedings, in the event the aforesaid sale proposal met the children's approval. Accordingly, on her return to California, Mrs. Stanley took with her the original and one copy of a contract of sale, dated March 18, 1944, naming Flowers as party of the second part, or purchaser, and Mrs. Stanley and her three children and their two spouses, as parties of the first part, and purporting to embody, in a general way, the essential terms of the oral agreement she and Flowers had entered into. This contract, according to the writing introduced in evidence as Mrs. Stanley's copy thereof, specifically provided that in the deed to be executed and delivered under the terms thereof, one-half of the "minerals and mineral rights under said land" was to be retained by parties of the first part. When the original of the contract had been executed by all the heirs in California, Mrs. Stanley mailed it to Attorney L at Guymon, in May, 1944. About three months later, Attorney L completed the court action instituted to perfect the title as aforesaid, and, at nearly the same time, said vendors and their spouses, executed (in the two California counties of their respective residences) the warranty deed that is the subject of this action. According to the undisputed testimony, when this deed was received by Mrs. Stanley for her and the other grantors' execution, it purported to reserve to said grantors, all, instead of only one-half, of the minerals under said land. Noticing that this did not conform to the contract with Mr. Flowers, Mrs. Stanley and her two sons conveyed this information to Mrs. Essie Bowerman, the San Bernardino Notary Public, before whom some of the grantors appeared to acknowledge their signatures, and had her, on her typewriter, type into the deed, by way of interlineation, the words "one-half of" so that, as thus corrected, the reserving provision read, in part, exactly as follows: "Grantors, (naming them) * * * hereby expressly reserve to themselves * * * one-half of all of the oil, gas, and minerals * * * and mineral rights in, to and under the above described lands * * *". After making said change, and after all of the grantors had signed and acknowledged the deed, the afore-named Notary caused them to indicate their authorization of said correction by writing their respective initials opposite same on the deed's right hand margin. As an additional precautionary measure, she typed at the bottom of the deed, over her signature and seal, the following: "October 14, 1944, the correction 'one-half of' all of the oil, gas, etc. was made, initialed, subscribed and sworn to before me." Thereafter, Mrs. Stanley, apparently in accord with a previous request by Attorney L, forwarded said deed, as corrected, to the City National Bank of Guymon; and, in November, 1944, a few days after the deed was recorded in October, she received from said Bank checks for herself and children in payment of the agreed consideration for the land.

In 1950, Mrs. Stanley's last husband died and his sister, a Mrs. Cook, also of Texas County, Oklahoma, while on a trip to San Bernardino to attend the decedent's funeral on November 13th, of that year, stated in a conversation with Mrs. Stanley, in substance, that Mr. Flowers had told her that the reservation of minerals in the above-described deed was for a term of only 20 years. Mrs. Stanley, who testified that she was then in a "very bad" state of health and "very disturbed", further testified that she "didn't think much about * * * (Mrs. Cook's statement) until probably three weeks later" and then she "went and got" the copy of the contract with Flowers that she had kept "and read it and it didn't state for a period of twenty years * * *". Mrs. Stanley further testified, in substance, that she made no further investigation of the matter at the time. In 1954, as a result of an oil well having been recently drilled

on the land, Mrs. Stanley began to receive offers to buy the family's interest in the mineral rights thereunder, and she made a trip back to Guymon and vicinity. At least one offer of $200 per acre was communicated to her from Perryton, Texas, where Mr. Flowers lived. After its being indicated to her from expressions from at least one prospective buyer that hers and the children's title might have to be perfected, and upon examining the deed that had been recorded, and having a Guymon lawyer examine the public record thereof, Mrs. Stanley discovered that, in addition to the hereinbefore described interlineation that had been made in California, there had been typed on the deed an additional interlineation which had the effect of placing a 20-year limitation on the duration of the reservation of minerals therein contained.

Within a short time thereafter, and specifically on October 13th, 1954, Mrs. Stanley and her sons and daughter commenced the present action against Mr. Flowers and his wife to obtain reformation of the above-described deed by striking the second aforesaid interlineation therefrom, and to quiet their title to an undivided one-half interest in and to the mineral rights under the involved two half-sections, or 640 acres, of land.

In their answer and cross petition, Flowers and his wife, hereinafter collectively referred to as defendants, specifically denied, in substance, that the above-described deed was altered or changed after its execution and delivery, alleged that subsequent to the transaction in question, the land had become valuable for oil and gas, Flowers had become incompetent to transact business, and that if plaintiffs ever had a complaint to make about the deed, they should have done it before the passage of time had enhanced the value of the land and had rendered proof difficult to obtain. Defendants further asserted that plaintiffs were guilty of laches and that their alleged cause of action was barred by the statute of limitations in such cases made and provided.

At the trial, a jury was empaneled to act in an advisory capacity to the Judge, and it returned a general verdict for plaintiffs. The verdict also bore the following written memorandum, signed by the foreman thereof:

"The jury is of the opinion that the interlineation on the deed pertaining to the 20 year limitation period was inserted after the signed deed was returned from California, but before it was delivered to Mr. Flowers, that Mr. Flowers was unaware of the date and time of this insertion and should therefore be cleared of any charges of any fraudulent action pertaining to the case."

Thereafter, the trial court incorporated the above-quoted memorandum in his judgment for plaintiffs. The journal entry of said judgment also recited that:

"*The court after hearing the evidence and argument* of counsel *finds* that the deed in question was altered and the following words, (for a period of 20 years) was inserted in said instrument. * * *

"That the action was instituted within two years from the date of the discovery of the alteration. * * * that the wordage * * * should be stricken and deleted from said deed for the reason the same was placed therein and added after the execution of said instrument and without the consent or authority of the grantors. * * *" (Emphasis ours.)

After the overruling of their motion for a new trial, defendants perfected the present appeal.

Their first assignment of error is the general one that the trial court erred in the latter ruling. Of the other five propositions under which their argument for reversal is advanced, Propositions II to IV, both inclusive, pertain more particularly to their second, fourth and fifth assignments of error that the trial court erred in overruling their motion for judgment on plaintiff's opening statement, and their demurrer to

plaintiff's evidence, and that the findings of fact, conclusions of law and judgment are contrary to law and to the evidence. As, in addition to their demurrer to plaintiff's evidence, defendants also moved for a directed verdict, immediately before the submission of the case to the jury, only this latter challenge to the sufficiency of the evidence, as a whole, will be considered. See Atchison, T. & S. F. Ry. Co. v. Perryman, 200 Okl. 266, 192 P.2d 670.

Under their Proposition VI, defendants contend, citing Critchlow v. Bacon, 142 Okl. 168, 285 P. 968, that in order to justify reformation of a deed, the evidence must be full, clear, unequivocal and convincing; and they say the evidence in this case does not meet that test. They recognize that all of the plaintiffs testified unequivocally, corroborated in a measure by the testimony of the Notary, Mrs. Bowerman, that the interlineation "for a period of 20 years" was not in the deed in question when they executed it in California (and we observe that the evidence did not show directly, positively or precisely when, or by whom, these words of limitation on the duration of the mineral reservation were written into the deed) but they attack the weight and credibility of this testimony, charging in substance that, in view of other circumstantial evidence, of certain discrepancies in the sworn testimony and depositions of some of the witnesses, and the unreliability of the human memory over a long period, their testimony on that point is inherently improbable and unworthy of belief.

As an explanatory preface to discussion of a portion of the foregoing argument, brief reference should be made to other evidence. The County Clerk's reception record had written on it, opposite the date of the deed's reception, on October 31, 1944, and the names of "Stanley, Era I., et al." and "Oscar Flowers", as grantors and grantee, respectively, the name of "Oscar Flowers" in both the "From Whom Received" and "To Whom Delivered" columns. Attorney L testified that he had no independent memory, or recollection, of the trans-

action, but, upon examination of the deed which was in evidence, he recognized the manuscript cover it was on, as being one of his, and, in corroboration of other evidence, gave an affirmative answer to the question: Would you say it was drawn at your office?" His testimony and law office records, consisting of letters and memoranda, tended to show that office was where the afore-mentioned contract of sale between plaintiffs and Flowers (that Mrs. Stanley took to California for plaintiffs' execution) was drawn, although the original of said contract was never produced, nor accounted for. In support of their denial that the words "for a period of 20 years" were written into the deed after it was excuted, defendants introduced as their Exhibit 10, certain notes written on a memorandum sheet taken from said attorney's office files, which apparently pertained to the transaction. The notes consisted of the name "Oscar C. Flowers" and the figure "100⁰⁰" (which is the same figure in money that said attorney was paid as a fee) together with the names of plaintiffs and their spouses, abbreviations as to their addresses, the figure: "8000⁰⁰", and the further notation: "½ M & M Right 20". When asked if he put the words "for a period of 20 years" in the deed, or advised that it be done, this attorney witness testified: "I wouldn't know about that" but he further stated: "* * * I would say it was done on my typewriter." As to another document from his files that apparently looked like a copy of the original deed, but did not contain the questioned interlineation, the attorney testified, in substance, with reference to the customary handling of such matters in his office, that when the original of an instrument there drawn was "corrected", or amended: "We tried to correct the file copy"; but, on cross examination, he further testified: "I generally leave that to the girls (in the office)", and: "It is not always done * * *". This attorney also identified, as a copy of one of his title opinions, a letter dated November 29th, 1944, to Mr. Flowers, in which it was indicated, among other things, that he was the one

who, after completion of the transaction, forwarded the deed to the County Clerk for recording.

 In their defense, defendants also introduced evidence to the effect that it had been Mr. Flowers' custom, before being rendered incompetent as a result of falling from a horse several years before the trial, to write letters and memoranda, in explanation, to his wife, in the event of his death, of the various items of his property. One of these was a letter identified by Mrs. Flowers (in the absence of his appearance as a witness) as having been written to her by her husband in 1940, informing her of his five-year lease on the land in question and specifying the lease's expiration date as "April 15th, 1944." Written on the bottom of this letter, in handwriting identified by Mrs. Flowers as her husband's, was the following notation:

"11–16–45

"I have purchased this land & paid cash for same Grantors retained ½ of oil rights for 20 yrs

O. C. F."

It is unnecessary to lengthen this opinion by describing the various alleged discrepancies between some of the plaintiffs' testimony and their aforementioned depositions, which is the subject of much of defendant's argument under this proposition. Suffice it to say that such argument is germane only to the credibility of those witnesses, which was for determination in the trial court. Plumer v. Pearce, 208 Okl. 526, 257 P.2d 813. There is nothing equivocal about the evidence introduced by plaintiffs on the principal substantive issue in the case, viz., whether or not the reservation provision was altered by insertion of the questioned wording *before* or *after*, the execution of the deed. As hereinbefore noted, the testimony of each of the four plaintiffs was positive that the interlineation effecting the 20-year limitation on its duration was not in the deed at the time they executed it. In this connection, see Smith v. Fox, Okl., 289 P.2d 126. This was corroborated by their copy of the contract providing for

the conveyance evidenced by said deed, and by the Notary, Mrs. Bowerman, the gist of whose pertinent testimony was, in substance, that if said interlineation had then been on the deed, she thought it would have been noticed, there would have been something said about it, and she would have remembered it. In their argument, under Proposition VI, defense counsel mention their objection and exception to the purported contract copy's being introduced in evidence, but they do not now urge its introduction as error, or cite any authority for such proposition. We, therefore, express no opinion with reference thereto. Rosamond v. Reed Roller Bit Co., Okl., 292 P.2d 373, 375.

The majority of the argument under defendants' Propositions I, II, IV, and V pertains generally to their defenses of laches and statute of limitations. They call our attention to the hereinbefore unmentioned inference in plaintiffs' petition that the deed alteration here involved was performed "falsely, wrongfully" and "wilfully", as well as "erroneously", and that said act constituted "a fraud." On the basis of such pleading (although, as already noted, the evidence did not directly or precisely disclose who committed said act, and whether, in addition to being erroneous, it was done wilfully and with intent to defraud—as distinguished from being done inadvertently or as the result of only a mistake, or misapprehension, as to the actual agreement of the parties. See 76 C.J.S. "Reformation of Instruments" § 21, note 57, and § 25) defendants maintain that the proper limitation period applicable to this case is the 2-year period provided by Tit. 12 O.S.1951 § 95, subd. 3, for actions for relief on the ground of fraud. They argue that since both plaintiffs' counsel's opening statement, and Mrs. Stanley's own testimony, showed that Mrs. Cook had relayed to her Mr. Flowers' statement, about the limited duration of the reservation, almost four years before this action was commenced, it is now barred. They say the conversation with Mrs. Cook gave Mrs. Stanley notice of facts sufficient to put a

prudent person on inquiry; that such facts were such that, if pursued to their logical conclusion, would have led Mrs. Stanley to discover the alleged fraudulent alteration; that consequently the limitation period began on the date of said conversation in 1950. Defense counsel say: "We do not here urge that the mere recording of the deed was constructive notice (to Mrs. Stanley and her children); however, where the means of confirmation of fraud after notice be in the public records and were or would have been available to the plaintiff had she availed herself of same, then the implication of actual notice is 'necessary and absolute'." Complementing the above argument, defense counsel say the evidence sufficiently showed that Mrs. Stanley was the agent of her children in the transaction, and was their co-tenant in the ownership of the mineral rights, that said limitation period applies to their claims, as well as hers, and the lapse of time between the Cook-Stanley conversation is sufficient to defeat said claims on the grounds of both laches and the limitation statute. They say the trial court should have recognized this, and also that the issue was purely a matter of law, either by sustaining defendant's motion for judgment on plaintiffs' opening statement, or their challenge to the sufficiency of the evidence. Plaintiffs' principal answer to this argument is that the applicable period of limitations is not two years, but the five-year period specified in the last, or sixth, subd. of sec. 95, supra, for actions "for relief, not hereinbefore provided for, * * *", citing Hoskins v. Stites, 182 Okl. 455, 78 P.2d 413. (Notice also the Annotation at 36 A.L.R.2d 687, 696, 705.)

▅▅▅▅ In the jury's verdict and the trial court's hereinbefore quoted judgment, inheres the finding that the action was commenced within two years from the time plaintiffs had notice of any facts that would have led them to discover that the deed had been altered, after their execution of it. If this finding stands, it is unnecessary to decide whether the applicable limitation period is two years, or five years. (In this

connection notice Barrows v. Alford, 129 Okl. 265, 264 P. 628, 629, and 53 C.J.S. "Limitations of Actions" § 95.)

In ascertaining whether or not this finding may be overturned, or nullified, in this appeal, it is first necessary to determine the question of whether or not the issue as to notice was a question of law, or of fact. This is for the purpose of arriving at the criterion which shall govern our review of the evidence, for, as herein indicated, the jury was empaneled to act in an advisory capacity only, and, as will be noted from the last quoted portion of the journal entry of judgment, the determination, as to such issue, was recited and described as if it was an independent finding and conclusion in a case of equitable cognizance tried by the court, without a jury. We cannot agree with the statement made by defendants, under their Proposition III, that the trial court based his findings on the jury's general verdict. We think the journal entry of his judgment plainly represents (as plaintiffs' counsel say) that the trial judge reviewed the evidence and arrived at his own independent findings and conclusions therefrom. Therefore, as held in Apache State Bank v. Daniels, 32 Okl. 121, 121 P. 237, 40 L.R.A.,N.S., 901, the trial court's alleged error (asserted in the last cited Proposition) of submitting the cause to the jury for a general verdict, rather than submitting to it only interrogatories concerning specific questions of fact, was not reversible error. In this connection, see also the Annotation at 156 A.L.R. 1147, 1174, 1175.

The next question to be determined is whether, or not, the trial court's findings that the suit was filed within two years from the time the deed's alteration was discovered, or by the use of diligence it should, or ought, to have been discovered, was clearly against the weight of the evidence. Collmer v. Collmer, 206 Okl. 661, 246 P.2d 350; Hoskins v. Stites, supra; Annotation, 156 A.L.R. 1147, 1184, 1185; 34 Am.Jur., "Limitation of Actions", sec. 167. In support of their contention that the trial court should have determined, as a matter of law, that the action was barred, because two

years, or more, elapsed before it was brought, after Mrs. Stanley's conversation with Mrs. Cook, defendants cite Boyd v. Prudential Ins. Co. of America, 189 Okl. 151, 114 P.2d 467. We do not think that case is controlling here. There, the officials of the town, that was making the claim adverse to the plaintiffs, advised one of them directly of that fact, while here the only word coming to Mrs. Stanley, claimed to have given her sufficient notice of "facts" to provoke an inquiry on her part and lead to discovery of the deed's alteration, came not from any agent of Mr. or Mrs. Flowers, and was in the nature of hearsay told to her in a casual conversation by Mrs. Cook, who bore no relationship to the Flowers. We think the rule properly applicable to this case is the general one applying to all cases (even those of fraud, assuming, without deciding, that this is such a case) where reasonable men may differ as to their conclusions from the facts, disputed or undisputed—that is, that whether plaintiffs have used diligence in discovery, or should, as reasonably prudent persons have been put on inquiry and investigation from what they heard, or knew, was a question to be determined in the trial court, on the basis of the facts and circumstances of the particular case. See McNeal v. Steinberger, 192 Okl. 283, 135 P.2d 490, 491; 54 C.J.S. Limitations of Actions § 189, p. 193, § 198, p. 201, § 205, p. 218, § 400, p. 552. In § 191 of the last cited Work, it is said:

"In a number of carefully considered cases it has been held that the mere fact that the defrauded person has the opportunity or power to investigate and discover the fraud is not sufficient to charge him with notice or knowledge so as to start the running of the statute of limitations, but that he must be cognizant of such facts as would cause an ordinarily intelligent and prudent man to make an investigation which, if pursued, would disclose the fraud, that there must be some reason to awaken inquiry and direct diligence in the channel in which it would be suc-

cessful, and that a mere suspicion of fraud is not sufficient to constitute a 'discovery' which will set the statute in motion. * * *

"Where no duty is imposed by law on a person to make inquiry, and where under the circumstances a prudent man would not be put on inquiry, the mere fact that means of knowledge are open to a plaintiff and he has not availed himself of them do not debar him from relief when thereafter he shall make actual discovery. In order to warrant a denial of recovery to a person who has been defrauded, the circumstances must have been such that inquiry became a positive duty and failure to make the inquiry was an omission of a duty."

In some respects, the facts of the present case are similar to those in Stocklassa v. Kinnamon, 132 Okl. 139, 269 P. 1080, 1081, where a bank was an escrow holder for the deed, and the plaintiff saw it delivered to the bank. There the court said:

"He saw it delivered to the escrow holder, no doubt, for the purpose of putting it beyond the control of his grantor. The deed conformed to the agreement at that time, and plaintiff *had a right to rely on its remaining in that form.*" (Emphasis ours.)

The plaintiff there, as the plaintiffs here, never saw the deed from the time he executed and delivered it to the bank, until a short time before he commenced the action, which latter was more than four years after the deed was recorded. Here we think it was a question of fact whether, under the circumstances, Mrs. Stanley, after what Mrs. Cook told her, had information of a character and sufficiency that should have provoked more of an investigation on her part than finding and reading her copy of the contract under which the deed was executed, and whether her conduct constituted due diligence under the circumstances. On the issue of discovery of the alteration, the same determination of fact applies to the defenses of both laches and limitation. 76 C.J.S. Reforma-

**848**

tion of Instruments § 69. In our opinion the determination of that issue was one about which reasonable men might reach different conclusions.

In view of the foregoing, we conclude that the trial court committed no error in overruling defendants' motion for judgment on plaintiffs' opening statement, and their challenge to the sufficiency of the evidence. Nor can the judgment of the trial court be held to be clearly against the weight of the evidence, or contrary to law. Accordingly, it is affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.