Carlene **GURLEY**, Appellant,

v.

**MEMORIAL HOSPITAL OF GUYMON,**
an unincorporated association,
Appellee.

No. 64019.

Supreme Court of Oklahoma.

March 7, 1989.

---

Thomas W. Sullivan, Sr., Oklahoma City, for appellant.

Glen D. Huff, G. Scott Ray, Oklahoma City, for appellee.

KAUGER, Justice.

The only issue presented by the appellant, Carlene Gurley (Gurley), is whether she is bound by the notice provision, 51 O.S.1981 § 156(B),[1] of the Political Subdivision Tort Claims Act (Act), 51 O.S.1981 § 151, *et seq.*, in her suit against the appellee, Memorial Hospital of Guymon (Hospital). Gurley asserts that because the Hospital purchased liability insurance pursuant to § 169[2] of the Act, it waived its sovereign immunity to the extent of the insurance coverage. We find that a political subdivision's purchase of liability insurance does not abrogate the necessity to provide notice pursuant to the Act.[3]

## FACTS

After Gurley was injured in an automobile accident, on February 26, 1983, she was taken to Guymon Memorial Hospital for treatment. She was transfused with several units of blood which were incompatible. Gurley developed blood in her urine, her urine output dropped, and eventually she suffered complete kidney failure. Gurley was first transferred to High Plains Baptist Hospital in Amarillo, Texas where she was diagnosed as suffering from acute kidney failure caused by an incompatible transfusion. She was then transferred to St. Anthony's Hospital, also in Amarillo,

1. Title 51 O.S.1981 § 156(B) provides:
   "A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs."
   Section 156(B) was amended in 1988 to require that claims be presented within 90 days after the loss in order to avoid a statutorily imposed penalty of 10% for claims brought outside the 90-day period. The amended provision also contains a one year statute of limitations.

2. Title 51 O.S.1981 § 169 provides in pertinent part:
   "A. The governing body of any county may:
   1. Insure the county against all or any part of any liability it may incur for death, injury or disability of any person or for damage to property, either real or personal;
   2. Insure any employee of the county against all or any part of his liability for injury or damage resulting from an act or omission in the scope of employment;
   3. Insure against the expense of defending a claim against the county or its employee, whether or not liability exists on such claim; or
   4. Insure the county or its employee against any loss, damage or liability as defined by Sections 702 through 708 of Title 36 of the Oklahoma Statutes, or other forms of insurance provided for in Title 36 of the Oklahoma Statutes."

3. The record contains an affidavit of the hospital administrator averring that the Hospital is owned and operated by Texas County through its Board of Control. Gurley does not question the Hospital's status as a political subdivision, nor does the record reveal any facts to support such an allegation. See, *Roberts v. South Oklahoma City Hosp. Trust,* 742 P.2d 1077, 1079 (Okla.1986).

for dialysis treatment where she remained until June 3, 1983.

On August 2, 1984, Gurley filed a petition naming as defendant, Texas County Memorial Foundation, Inc., d/b/a Guymon Memorial Hospital. The petition alleged that the Hospital and various physicians and staff were negligent in her treatment. The petition was amended on October 1, 1984, to reflect the defendant as Memorial Hospital of Guymon. On December 17, 1984, Gurley filed a second amended petition alleging that the Hospital, a political subdivision, had bought a liability insurance policy in accordance with statutory authority thereby waiving its sovereign immunity to the extent of the coverage. The Hospital had not been provided notice of the claim before the August 2nd petition was filed. The Hospital moved for summary judgment on February 15, 1985, asserting that Gurley had not complied with § 156(B), the applicable notice provision of the Political Subdivision Tort Claims Act. The trial court granted the Hospital's motion for summary judgment on February 27, 1985.

GOVERNMENTAL IMMUNITY IS WAIVED SUBJECT TO THE LIMITATIONS OF THE POLITICAL SUBDIVISION TORT CLAIMS ACT. A POLITICAL SUBDIVISION'S PURCHASE OF LIABILITY INSURANCE DOES NOT ABROGATE THE NECESSITY OF NOTICE PURSUANT TO 51 O.S.1981 § 156(B).

Gurley relies upon *Herweg v. Bd. of Educ.*, 673 P.2d 154, 156 (Okla.1983), for the proposition that the Hospital's purchase of liability insurance acted as a waiver of sovereign immunity negating the necessity of notice under § 156. The same assertion was made in *Day v. Memorial Hosp.*, 844 F.2d 728, 733 (10th Cir.1988). In *Day*, the Tenth Circuit analyzed this Court's holding in *Herweg*. It concluded that *Herweg* was inapplicable. The finding was based upon language in *Herweg* stating that political subdivisions "otherwise exempt under the Act" were still liable on insured risks. The Tenth Circuit found that because § 153 abrogated the hospital's immunity, it was not "exempt under the Act." It also held that in enacting the statute, the Legislature had expressly provided the circumstances under which a political subdivision could be sued, leaving no room for the judiciary to imply a broader consent.

The Florida Court of Appeals reached the same result in *Jozwiak v. Leonard*, 504 So.2d 1260, 1261 (1986), *aff'd*, 513 So.2d 666 (Fla.1987), finding that a false arrest plaintiff was required to comply with the sovereign immunity notice provision regardless of insurance coverage.[4] The Florida court based its holding on statutory language defining the parameters of the waiver of sovereign immunity. The applicable Florida statute provides that sovereign immunity is waived "only to the extent specified in this act." The Oklahoma statutory language parallels the Florida statute, § 153 states that sovereign immunity is waived "subject to the limitations specified in this act."[5] This language, like that found in

---

**4.** See also, *Levine v. Dade County School Bd.*, 442 So.2d 210, 211–12 (Fla.1983); *Mrowczynski v. Vizenthal*, 445 So.2d 1099, 1101 (Fla.App. 1984); *Burkett v. Calhoun County*, 441 So.2d 1108, 1109 (Fla.App.1983); *Riddle v. Cain*, 54 Or.App. 474, 635 P.2d 394, 396 (1981) (Holding that a county's authority to buy insurance and notice provisions of a tort claims act have no connection.). But see, *Williams v. Adams*, 189 N.J.Super. 196, 459 A.2d 707, 709 (1983) (Holding that the notice provision bars a suit against a political subdivision but may not bar a suit against its employee where insurance coverage exists.) In *Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182, 1191 (1985), the New Jersey Court held that the notice provision could survive constitutional attack only by receiving a directory rather than a mandatory construction. Oklahoma's notice provision has been held not to contravene constitutional guarantees of either the State or Federal Constitutions. See, *Black v. Ball Janitorial Serv., Inc.*, 730 P.2d 510, 515 (Okla.1986).

**5.** Title 51 O.S.1981 § 153 provides:
"Each political subdivision of this state shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment or duties subject to the limitations specified in this act. A political subdivision shall not be liable under the provisions of this act for any act or omission of an employee because of corruption or fraud of the employee."

*Jozwiak,* indicates the Legislature's intent to require compliance with the notice provisions of § 156. In 1984, the Legislature amended § 153,[6] retaining the quoted language, and adding a new subsection specifically stating that liability under the Act is exclusive.

◼ The general rule applied to laws in derogation of sovereignty is that a statute will not be construed to divest the state of its immunities unless the intention to do so is clearly expressed.[7] The Political Subdivision Tort Claims Act narrowly structures the method for bringing a tort claim against a political subdivision. The Act requires that the plaintiff give notice and commence an action within the prescribed statutory time limits.[8] Compliance with notice of claim provisions has been interpreted to be either a condition precedent to suit against a political subdivision,[9] or a jurisdictional prerequisite to judicial intervention.[10]

◼ Like the hospital in *Day,* Guymon Memorial Hospital is both subject to suit

under the Act, and legislatively authorized to insure itself against claims. The Act provides a single procedural regime with a single gauge of liability for all claims pressed against the government.[11] The fact that the Hospital purchases insurance does not abrogate the necessity to comply with procedures set forth by the Legislature for bringing claims against a political subdivision.

AFFIRMED

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN, ALMA WILSON, SUMMERS, JJ., concur.

OPALA, V.C.J., dissents.

---

Section 153 was amended in 1985. It remains substantially the same except for a provision that the state or political subdivision will be liable only where a private person or entity would also be liable. A provision stating that liability under the Act is exclusive has also been added.

6. Title 51 O.S.Supp.1984 § 153 provides:
"A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.
B. The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."

7. *McGaha v. Bd. of Regents,* 691 P.2d 895, 897–98 (Okla.1984).

8. *Jarvis v. City of Stillwater,* 732 P.2d 470, 473 (Okla.1987).

9. *Ibrahim v. Samore,* 118 Wis.2d 720, 348 N.W. 2d 554, 558 (1984); *Ferguson v. New Mexico State Highway Comm'n,* 99 N.M. 194, 656 P.2d 244, 247 (1982); *Vasys v. Metropolitan Dist. Comm'n,* 387 Mass. 51, 438 N.E.2d 836, 840 (1982); *Indiana Dept. v. Clark,* 478 N.E.2d 699, 702 (Ind.App.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980 (1986); *Sussman v. Univ. of Colorado Health Sciences Center,* 706 P.2d 443, 445 (Colo.App.1985). See also, *Galovick v. State,* 437 N.E.2d 505, 508 (Ind.App.1982) (Holding that lack of notice is a complete defense to suit.)

10. See, *Williams v. Adams,* note 4, supra.

11. See, *Black v. Ball Janitorial Serv., Inc.,* note 4, supra.