2001 OK CIV APP 95

**Mikal Shon TICE and Linda Welch, Plaintiffs/Appellants,**

v.

**Larry PENNINGTON, M.D. and State of Oklahoma (Oklahoma Memorial Hospital), Defendants/Appellees.**

No. 94,171.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 30, 2001.

David W. Edmonds, Ellen A. Tallant, El Reno, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, OK, for Plaintiffs/Appellants.

J. William Conger, Ryan F. Wilson, Hartzong, Conger & Cason, Oklahoma City, OK, for Defendants/Appellees.

## MEMORANDUM OPINION

RAPP, P.J.

¶ 1 The trial court plaintiffs, Mikal Shon Tice ("Shon") and Linda Welch ("Linda") appeal the trial court decision granting summary judgment to the trial court defendant, State of Oklahoma, Oklahoma Memorial Hospital ("Hospital"). The plaintiffs have settled with the remaining trial court defendant, Larry Pennington, M.D. ("Pennington") and the trial court's judgment presented for review is a final, appealable order.

### I. *Background*

¶ 2 Hospital is a State institution and claims against it are subject to the Oklahoma Tort Claims Act. Pennington was a teacher at the Hospital and a practicing surgeon.

¶ 3 Shon underwent a kidney transplant in 1991. Pennington was the surgeon. This transplant failed immediately while he was still on the operating table because the donor kidney was incompatible due to conflicting blood types. He received a Type "A" kidney but he is Type "O." This necessitated that Linda, Shon's mother, provide a kidney.

¶ 4 Neither Shon nor his mother, Linda, were informed about the mistakes resulting in the donor kidney failure. The facts and inferences, taken favorably for Shon and Linda for purposes of summary judgment, reveal that Pennington and another Hospital employee withheld the facts relative to conflicting blood types and actively concealed those facts from Shon and Linda. In addition, the Hospital failed to have adequate procedures, or failed to follow existing procedures, which would prevent the implant of a wrong kidney in a patient. A pattern of errors was documented from sometime prior to Shon's kidney rejection in 1991 and through ensuing years and came close to replicating the mismatch of kidneys in others.

¶ 5 Another teaching physician, in at least March 1996, became aware of the Hospital's inadequacies and the fact that Shon and Linda had not been informed of the reason for the donor transplant failure and need for Linda to donate a kidney. That physician wrote a series of letters and memoranda to Hospital authorities about the problems, but apparently without achieving any reforms. Then, subsequent to February 1998, he contacted Shon's current physician. In May 1998, Shon's physician informed both him and Linda of the reason for the 1991 operating room donor kidney transplant failure. This, according to the summary judgment record, would be the first time they learned of the reason for the donor kidney transplant failure.

¶ 6 In August 1998, a tort claim was filed and thereafter rejected. This litigation was instituted and Hospital moved for summary judgment. The Hospital defense is that the claim is time-barred and that the date of discovery does not apply. The trial court granted summary judgment. Shon and Linda appeal.

## II. *Standard of Review*

¶ 7 The appellate standard of review in summary judgment is *de novo. Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. This means without deference. *Hulett v. First National Bank & Trust Company In Clinton*, 1998 OK 21, 956 P.2d 879; see *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The pleadings and evidentiary materials will be examined to determine what facts are material and whether there is a substantial controversy as to one material fact. *Sperling v. Marler*, 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group*, 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the non-moving party. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051. Even though the facts may be uncontroverted, if reasonable persons may draw different conclusions from these facts summary judgment must be denied. *Bird v. Coleman*, 1997 OK 44, 939 P.2d 1123. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. *N.C. Corff Partnership, Ltd. v. OXY, USA*, 1996 OK CIV APP 92, 929 P.2d 288. When genuine issues of material fact exist summary judgment should be denied and the question becomes one for determination by the trier of fact. *Brown v. Oklahoma State Bank & Trust Co. of Vinita*, 1993 OK 117, 860 P.2d 230; *Flowers v. Stanley*, 1957 OK 237, 316 P.2d 840. Because the trial court has the limited role of determining whether there are any such issues of fact, it may not determine fact issues on a motion for summary judgment nor may it weigh the evidence. *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

¶ 8 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When a defendant moves for summary judgment without relying upon an affirmative defense, the defendant must show: 1) that no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) that the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pacific Railroad Co.*, 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd. Japan*, 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid*, 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946.

■■■ ¶ 9 The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, fn. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

**1168**

### III. *Analysis and Review*

¶ 10 The gist of the State's argument, in its motion for summary judgment, was that Shon's and Linda's claims are barred because they were not presented within one year from the date of the surgery that resulted in a rejected donor kidney or the use of Linda's kidney as a replacement. The Oklahoma Tort Claims Act, Section 156(B), requires presentment of the claim within one year of the date the loss occurs.[1]

¶ 11 Shon and Linda argued for application of the Rule of Discovery. This Rule tolls the Statute of Limitations when a party is unaware of the existence of a claim. The Statute of Limitations, as a general rule, functions to extinguish the remedy for a cause of action. It does not extinguish the cause of action itself. *Samuel Roberts Noble Foundation, Inc. v. Vick,* 1992 OK 140, 840 P.2d 619; *In re John Deere 4030 Tractor,* 1991 OK 79, 816 P.2d 1126. The commencement of the action stops the running of the statute of limitations so that the party may seek the remedy for the cause of action. *In re John Deere 4030 Tractor,* 1991 OK 79, ¶ 7, 816 P.2d 1126, 1129 fn. 1. According to the Rule of Discovery, the Statute of Limitations in tort actions does not preclude vindication of a right until such time as the person knows, or in the exercise of due diligence, should have known that the right existed. *In re John Deere 4030 Tractor,* 1991 OK 79, 816 P.2d 1126. *When applicable, the Rule mere-* *ly tolls the running of the Statute but the Rule does not change the date on which the Statute of Limitations commences.* McVay v. Rollings Construction Inc., 1991 OK 102, 820 P.2d 1331; *In re John Deere 4030 Tractor,* 1991 OK 79, 816 P.2d 1126. *An action for medical malpractice must be brought within two years of the date of discovery.* 76 O.S.1991, § 18.

¶ 12 The alternative rule, which is the one here urged by Hospital, makes the time limit of Section 156(B) of the Oklahoma Tort Claims Act operate as a statute which affects the cause of action so that the Rule of Discovery does not toll the time limitation of the Act. Under the alternative rule, time limitation becomes a substantive element of the claim, that is, one condition to the exercise of a right. The Oklahoma Supreme Court has characterized the Act's time limitation as constituting a condition upon the right to pursue a claim.[2] *Cruse v. Atoka County Board of Commissioners,* 1995 OK 143, ¶ 16, 910 P.2d 998, 1004.

¶ 13 Thus, the definitive question to be answered here is whether the failure to file a claim against the State within the statute's stated time limits results in the claim being barred under 51 O.S.1991, § 156(B) when the claim, which is being asserted, is not known because the State employees have actively prevented a claimant from discovery of the facts supporting a claim within the statute's stated time limits.[3] This Court, for

---

1. Section 156(B) of Title 51 provides:
 B. Claims against the state or a political subdivision are to be asserted within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

2. After the Oklahoma Supreme removed the common law doctrine of sovereign immunity in *Vanderpool v. State of Oklahoma,* 1983 OK 82, 672 P.2d 1153, the Legislature enacted the Governmental Tort Claims Act. In this Act, the Legislature adopted the common law rule of sovereign immunity and then partially waived immunity but "only to the extent and in the manner provided" in the Oklahoma Tort Claims Act. 51 O.S. 1991, § 152.1; *Cruse v. Atoka County Board of Commissioners,* 1995 OK 143, ¶ 10, 910 P.2d 998, 1001. Liability of the State under the Act is "exclusive and in place of all other liability...." 51 O.S.1991, § 153(B). The expiration of the time limitation of the Oklahoma Tort Claims Act operates to bar judicial enforcement of a claim against the government. *Cruse v. Atoka County Board of Commissioners,* 1995 OK 143, ¶ 16, 910 P.2d 998, 1004.

3. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the non-moving party. *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051. The record indicates a factual dispute about the employee vis-à-vis physician status of Defendant Pennington and whether another employee also withheld the information. Thus, Hospital's contention that, in all events, summary judgment was proper because the withholding of information was by a non-employee must fail under the standard of review applicable to summary judgments. This Court expresses no view about the conclusion a trier of fact would reach, based upon the evidence admitted in a trial, on the issue of an active effort to prevent discovery by Shon or Linda.

reasons herein set out, answers in the negative.

¶ 14 The answer to the question does not follow from a simple, mechanical application of the rule in *Cruse*. First, Cruse, as the claimant, did file a timely notice of claim and a timely lawsuit after the claim was denied. Cruse was fully aware of his "loss" and the need to present a claim. However, the claim was dismissed other than on it merits and then refiled. Hence, the ultimate holding in *Cruse* is that the savings provision of 12 O.S.1991, § 100 applies. Second, the case did not involve active concealment of the claim by government personnel.

¶ 15 Consequently, it becomes necessary to review and address two questions. First, this Court must determine whether the government can be estopped from asserting the time bar. Second, this Court must decide whether the claim was actually timely presented, that is, whether the Plaintiff's claim is barred under the Act where the government actively conceals acts giving rise to the claim. This Court holds: (1) Estoppel may be applied against the government when, as here, some principle of public policy or interest is fostered and a fact question exists concerning the fraudulent acts of concealment such that summary judgment is precluded; and, (2) The "diligence-discovery" Rule applies in cases where the government actively conceals acts giving rise to the plaintiff's claim and, in such cases, the obligation to present the claim does not accrue until the plaintiff has, or with reasonable diligence, should have discovered the critical facts of both the injury and the cause of the injury. *See Barrett v. U.S.*, 689 F.2d 324 (2nd Cir.1982).

### A. *Estoppel*

¶ 16 Estoppel is generally not available against the government in any case so as to protect a public policy or interest. *Board of Ed. of Ind. Sch. Dist. D. No. 48 v. Rives*, 1974 OK 153, ¶ 9, 531 P.2d 335, 337. Nevertheless, the Oklahoma Supreme Court has recognized an exception to this rule.

Generally, Oklahoma jurisprudence does not allow the application of estoppel against the state, the political subdivisions or agencies, *unless its interposition would further some principle of public policy or interest*. The rationale for recognizing a governmental shield from estoppel is to enable the state to protect public policies and interests from being jeopardized by judicial orders preventing full performance of legally-imposed duties. Hence, some stronger, more compelling policy or interest must be advanced before estoppel could be invoked against either the state or a public agency.

*Burdick v. Independent Sch. Dist.*, 1985 OK 49, ¶ 7, 702 P.2d 48, 53. (Emphasis added.)

¶ 17 In the same vein, the general rule, applicable to limitations statutes which condition the right to pursue a claim upon a timely notice, such as the Governmental Tort Claims Act, is that such statutes are not subject to the pleas in avoidance or waiver, such as estoppel arising from fraud and deceit. *Hiskett v. Wells*, 1959 OK 273, 351 P.2d 300. Moreover, the notice provision serves a state interest.

The notice provision furthers legitimate state interests by fostering a prompt investigation while the evidence is still fresh, the opportunity to repair any dangerous condition, quick and amicable settlement of meritorious claims, and preparation of fiscal planning to meet any possible liability.

*Reirdon v. Wilburton Bd. Of Ed.*, 1980 OK 67, ¶ 4, 611 P.2d 239, 240.

¶ 18 However, the question of whether estoppel may be interposed *in the specific case* of the Section 156(B) time bar has not been decided.[4]

¶ 19 In *Jarvis v. City of Stillwater*, 1987 OK 5, 732 P.2d 470, the Court listed those types of allegations which will estop a defendant from raising the time limitations. One such allegation is the "false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry, which induces one to refrain

---

4. Hospital cites *Hirth v. Village of Long Prairie*, 274 Minn. 76, 143 N.W.2d 205 (1966) for the proposition that fraud and deceit are not grounds to estop the government. That case relied upon M.S.A. § 466.09, a statute that was later repealed. The current Minnesota statute, M.S.A. § 566.05 permits filing of a claim within 180 days after discovery of the loss or injury.

from timely bringing an action." *Id.* at ¶ 4. However, the Court said further that, under the facts there, no question of estoppel could arise. Therefore, the question of whether such estoppel could be raised against the government to defeat a time-bar claim was left unanswered.

¶ 20 A similar situation arose in *Randolph v. Oklahoma Military Dept.*, 1995 OK CIV APP 30, 895 P.2d 736. The context of the case suggests that the Court would have found estoppel against the government had the *Jarvis* elements been present. Again, however, no definitive ruling was given on the issue of whether estoppel may be asserted against the government under facts such as presented in the case under review here.

¶ 21 On the other hand, in *Carswell v. Oklahoma State University*, 1999 OK 102, 995 P.2d 1118, the Court applied equitable grounds to hold that a claim was timely filed. There, the State's representative notified Carswell that the claim was denied effective on the date of the letter notification. The problem was that the date of the letter was later than the automatic denial date provided by section 157(A) of the Act. The lawsuit was timely filed only if the letter date was utilized. The Court ruled that, under the facts, equity would deem the claim's denial date to be the date represented by the State in the letter rather than the statutory denial date.

 ¶ 22 Thus, the dispositive question is whether the facts and circumstances of this case bring into consideration some prevailing public interest that will except it from the general rules pertaining to estoppel and government, and likewise, to estoppel and the conditional time bar. This Court holds that, under the facts here presented, estoppel may be asserted to avoid the time bar defense. For purposes of summary judgment, ques-

tions of fact exist on this issue which preclude issuance of summary judgment.[5]

¶ 23 We here find, based upon review of the record under the summary judgment standard, that the defendant Hospital's government personnel thwarted the very state interest set out in *Reirdon.* The acts of the state's own employees prevented a prompt investigation, repair of dangerous conditions, and/or quick and amicable settlement. There is no indication that matters of this nature cannot be thoroughly investigated and corrective action taken where necessary. With regard to the latter, the record indicates those conditions at the Hospital, whereby others could suffer the same fate as Shon, continued unabated through the years. In this context, the public interest will clearly be fostered by application of estoppel, because public employees will be less likely to attempt to cover up negligence of wrongdoing when any claim based upon such conduct would remain viable until it reasonably should be discovered. If there is less chance of a cover-up, there is a greater chance that corrective, remedial action will be speedily taken.

¶ 24 Moreover, another factor involving public interest is that the misleading conduct here comes in connection with providing medical care. Defendant, Hospital, evolved from being a teaching institution as part of the University of Oklahoma to a general hospital operated as a state agency and subject to the same standards as other hospitals.[6]

¶ 25 Hospitals are regulated and licensed in the public interest. 63 O.S. Supp.1995, ¶¶ 1–701 et seq. No person may gainsay the public interest in proficient medical care.

Hospitals, of course, by definition are establishments created primarily as havens

---

5. See footnote 3.

6. Hospital began as a teaching and training hospital and as a part of the University of Oklahoma. 70 O.S.1971, § 3306. It was separated in 1973 and established as an independent agency. The Legislature, at that time, specified that it would operate as a general hospital as well and as teaching facility. 70 O.S. Supp.1973, §§ 3306.1, 3604.4. In 1988 the Hospital was renamed Oklahoma Memorial Hospital and administrative authority was transferred to the Department of

Human Services, but its function as a general hospital was retained. 56 O.S. Supp.1988, §§ 402, 407. Subsequently the Hospital was transferred to the University Hospitals Authority, as the governing agency and became known as University Hospital. 63 O.S. Supp 1993, §§ 3201 et seq. Its general function as a general hospital was retained. 63 O.S. Supp 1993, § 3205(B)(1). A general hospital "means a hospital maintained for the purpose of providing hospital care in a broad category of illness and injury." 63 O.S. Supp.1995, § 1–701(2).

for the sick and afflicted. In this state one cannot operate a hospital without obtaining a license from the State Commissioner of Health and complying with rules, regulations, and standards promulgated by the State Board of Health—regulations designed to require at least minimum professional proficiency in terms of patient care and protection.

*Warner v. Kiowa County Hospital Authority*, 1976 OK CIV APP 11, ¶ 38, 551 P.2d 1179, 1188.

¶ 26 Here the "loss" cannot be defined as simply Shon's donor kidney failure, or the deceptive taking of Linda's kidney (property), or the misrepresentation to both of them that Shon had some rare blood disorder, with the implication that he might never qualify for a donor kidney. Both of these individuals, as well as the public generally, have rights: (1) to be treated competently; (2) to be told the truth; (3) to not be exposed to prevarication, especially that which leads them to believe that one suffers from a rare disorder; (4) to be provided accurate, immediate information concerning their health state; and, (5) not to have their vital body parts taken under fraudulent circumstances.

¶ 27 Hence, the prevailing public interests, which except this case from the general estoppel rule, are the public's interest in speedy investigation of claims without cover-up by state employees and the public's interest in proficient medical care unimpeded by a prevarication, concealment, and/or misrepresentation. These prevailing interests outweigh any reasonable premise to protect the public's interest fostered by the time-bar in Section 156(B) of the Governmental Tort Claims Act. This conclusion is bolstered, as stated before, by the fact that the governmental conduct in this case served in large measure to thwart the very interests served by the Act.

**B. "Diligence–Discovery" Rule**

¶ 28 Here, for the purposes of summary judgment, the critical facts relating to Shon's claims were in the control of state employees. Neither he nor his mother would have discovered the truth no matter how diligently they pursued the issue. The evidence, at this stage of the proceeding, demonstrates intentional concealment of material facts relating to: (*l*) the facts surrounding the kidney failure; (2) the responsibility for the kidney failure; (3) the dim likelihood of a replacement kidney; (4) the apparently false representation that Shon suffered a rare disorder; and, (5) the need to use his mother's kidney.

¶ 29 The "diligence-discovery" rule applies so as to preclude entry of summary judgment. *Kronisch v. United States*, 150 F.3d 112 (2nd Cir.1998); *Barrett v. United States*, 689 F.2d 324 (2nd Cir.1982). Although these cases involve the Federal Tort Claims Act, they involve medical cover-up by governmental personnel, and their rationale pertains here.[7]

¶ 30 Therefore, whenever the government acts to conceal from a prospective plaintiff the knowledge of the injury, or knowledge that could lead to the basic facts of the injury, that is, knowledge of the injury's existence and knowledge of its cause, then the obligation to present a claim does not accrue until the potential plaintiff acquires such knowledge, or should have acquired such knowledge. The prospective plaintiff need not have exact knowledge. The claims accrue when the plaintiff knows, or reasonably should know, of enough critical facts about the injury and its cause to protect himself or herself by seeking legal assistance. *Kronisch v. United States*, 150 F.3d 112 (2nd Cir.1998).

---

7. In *Kronisch,* the plaintiff, Stanley M. Kronisch, brought suit alleging that, without his knowledge, he was administered LSD (lysergic acid diethylamide) by officials of the United States Central Intelligence Agency ("CIA") in the early 1950's. The government asserted that the claims were time-barred and the District Court agreed. The Court of Appeals reversed. *Barrett* involved a plaintiff serving as an unknowing subject for mescaline Army experiments. These experiments were conducted as a part of the United States Army's chemical warfare experiments. The District Court dismissed the claim as time-barred. The Court of Appeals reversed and held, among other rulings, that the application of the "diligence-discovery" rule standard was warranted.

### C. Application of Rulings to Linda's and Shon's Claim's

#### 1. When Linda's Claim Matured

¶ 31 Here, for purposes of summary judgment, Linda has demonstrated that fact questions exist so as to invoke the estoppel and "diligence-discovery" principles reviewed above. Hence, the trial court erred when it granted summary judgment.

¶ 32 In addition, we find the dismissal of the claim of the mother, Linda, was erroneous absent the application of any estoppel or "diligence-discovery" rule. The Governmental Tort Claims Act exempts *only* unintentional misrepresentation. 51 O.S. Supp.1999, § 155(17). According to the materials submitted for consideration of summary judgment, the pattern of misrepresentation continued until 1998 when Linda was informed of the wrong done to her.

¶ 33 A "tort" is defined in the Act as:

"Tort" means a legal wrong, independent of contract, involving violation of duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.

51 O.S. Supp.1999, § 152(11).

¶ 34 Section 156(B) requires presentment of the claim "within one (1) year *of the date the loss occurs.*" The term "loss" is defined in the Act.

"Loss" means death or injury to the body *or rights of a person* or damage to real *or personal property or rights therein.*

51 O.S. Supp.1999, § 152(6). (Emphasis added.)

¶ 35 This Court holds that, under the facts presented for purposes of summary judgment, Linda's claim is not barred because, under one theory, Linda's actionable "loss" under the total array of these facts, had not fully evolved until the suppressed facts were discovered or were reasonably susceptible of discovery.[8] In other words, the "tort" in her case was not simply the taking of her kidney under deceptive circumstances, but rather the taking *coupled* with the alleged ongoing and continuing misrepresentation which continued the deception. Thus, the "cover-up" of claiming her son had a rare blood disorder to induce her to relinquish her kidney and the continued intentional misrepresentation are integral parts of what happened. The commission of the "tort," that is the violation of the duty to her, did not cease until 1998. Therefore, as to Linda the time bar would not be a defense as a matter of law, unless the Hospital can show that she knew or should have known of the deception at an earlier time and still did not file a timely notice of her claim. However, under the record here presented, Hospital has not made that showing and summary judgment was erroneous and should not have been granted.

#### 2. Maturity of Shon's Claim

¶ 36 Shon's claim is likewise governed by the estoppel and "diligence-discovery" principles discussed here. The facts concerning the injury, the cause of the injury, and the responsibility for the injury were all the subject of acts of concealment by government employees. Therefore, the trial court also erred in its grant of summary judgment as to Shon's claim.

¶ 37 However, Shon's claim, unlike Linda's, cannot rest upon the additional theory that supports Linda's claim. While he, too, would be a victim of the alleged deceptive practices, the fact is that his loss, unlike Linda's, was not proximately caused by the deception or the continued deception. Shon's claim is primarily for negligence. He suffered a loss from the failure of the donor kidney. Additionally, his ability to receive another kidney successfully was impaired and he alleges that the kidney he received from his mother is now failing.

### IV. Summary and Conclusion

¶ 38 Here, Shon and Linda were required to demonstrate that they have complied with

---

8. A party may set forth as many claims or defenses as the facts may support regardless of any inconsistency. 12 O.S.1991, § 2008(E)(2). Thus, to the extent that Linda's theory of recovery focuses exclusively upon the events occurring in 1991, and when she relinquished her kidney, then the question of the Section 156(B) time bar again becomes a factor subject to this Court's ruling above.

the Governmental Tort Claims Act. The Hospital utilized summary judgment procedures and challenged whether they demonstrated compliance with the Act.

¶ 39 It is undisputed that Shon and Linda have complied with the Act, except for the Section 156(B) time-bar. This time-bar is an affirmative defense for the Hospital. 12 O.S. 1991, § 2008(C)(18) and (20). For purposes of summary judgment, the Hospital has demonstrated that, under the general rule applicable to this time-bar, it has an affirmative defense. It then became incumbent upon Shon and Linda to demonstrate a legal and factual basis to exempt themselves from the rule that the time-bar is a condition upon the right to pursue the claim and a condition not ordinarily subject to avoidance on the ground of estoppel which they did.

¶ 40 As discussed herein, the legal bases exist to exempt them from the time-bar rule on the ground of estoppel and the "diligence-discovery" Rule. Mother and Son have raised questions of fact regarding the elements of estoppel and the "diligence-discovery" Rule so that summary judgment is not available under this record. Moreover, under one theory available to Linda the time to file notice did not mature until she was informed of the deception.

¶ 41 Therefore, the trial court's grant of summary judgment was erroneous and is REVERSED.

¶ 42 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 43 STUBBLEFIELD, J. (sitting by designation), concurs; TAYLOR, J., dissents.

TAYLOR, J., dissenting.

¶ 1 I respectfully dissent.

¶ 2 The time to file a notice of claim against the state or its political subdivisions clearly runs from the "date the loss occurs." 51 O.S. Supp.1999 § 156(B). Here, the loss occurred in 1991, yet the notice of claim was not filed until 1998, obviously outside the time limit for filing a notice of claim.

¶ 3 The Governmental Tort Claims Act (GTCA) "narrowly structures the method for bringing a tort claim against a political subdivision." *Gurley v. Memorial Hosp. of Guymon,* 1989 OK 34, ¶ 6, 770 P.2d 573, 576.

The notice provisions of the GTCA "are a creation of statutory law and '[create] a right previously unknown to both the common as well as the statutory law' [and constitute] a condition precedent and an essential element of any right to a cause of action against [a state governmental entity]." *Leding v. Pittsburg County Court,* 1996 OK CIV APP 107, ¶ 8, 928 P.2d 957, 959 (quoting *Lasiter v. City of Moore,* 1990 OK CIV APP 76, ¶ 4, 802 P.2d 1292, 1293). Compliance with the notice-of-claim requirements has been viewed as "either a condition precedent to suit against a political subdivision, or a jurisdictional prerequisite to judicial intervention." *Gurley,* 1989 OK 34, ¶ 6, 770 P.2d at 576. Plaintiffs failed to comply with the notice provisions of section 156(B) because they did not timely file their notice of claim. Thus, they did not meet the condition precedent to suit against State and judicial intervention is not allowed. .

¶ 4 Despite the clear noncompliance with the notice provisions of section 156(B), the majority is reversing and remanding this action on the ground that "Mother and Son have raised questions of fact regarding the elements of estoppel...." The majority finds that estoppel may apply against State because "the public's interest in proficient medical care unimpeded by a prevarication, concealment, and/or misrepresentation" outweighs "any reasonable premise to protect the public's interest fostered by the time bar in Section 156(B)." I disagree. "The notice provision furthers legitimate state interests by fostering a prompt investigation while the evidence is still fresh; the opportunity to repair any dangerous condition; quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability." *Reirdon v. Wilburton Bd. of Ed.,* 1980 OK 67, ¶ 4, 611 P.2d 239, 240. I would not apply the doctrine of estoppel to toll the notice provisions of section 156(B).

¶ 5 I disagree with the majority's engrafting the equivalent of a discovery rule onto the notice provisions of the Governmental Tort Claims Act in an effort to toll the period for filing a notice of claim. Section 156(B) is clear in requiring that the time to file a

notice of claim is calculated from the date of the loss. Because the GTCA is in derogation of sovereignty, it "will not be construed to divest the state of its immunities unless the intention to do so is clearly expressed." *Gurley,* 1989 OK 34, ¶ 6, 770 P.2d at 576. Thus, section 156(B) should not be construed to include a discovery rule that clearly is not part of the statutory language and that would divest the state of its immunity.

¶ 6 Furthermore, the discovery rule as a tolling mechanism has generally been applied where the language of the statute specifically provides for a discovery rule, 76 O.S.1991 § 18, or where the language of the statute of limitations uses words such as "accrue" or "arise," *see* 12 O.S. Supp.1999 § 95. Section 156(B) clearly calculates the time to file a notice of claim from the date of loss, not from the date the cause of action accrues or arises. Thus, I would find that the discovery rule does not apply to the notice provisions of section 156(B). *See Montgomery v. Polk County,* 278 N.W.2d 911, 914 (Iowa 1979). In this case, the loss occurred during 1991, not when it was "discovered" during May of 1998.

¶ 7 Our duty is to construe the GTCA in accordance with what we deem to be the intent of the Oklahoma Legislature in enacting it. Did the Legislature intend, by section 156(B), that actions must be brought within the time therein stated, or did it intend, as Appellants claim, that time may run from later discovery? Since the statute does not use the term "when the claim accrues" or "arises," the statute does not have the elasticity that has been demonstrated by the body of court-made law that has developed.

¶ 8 While my position on this issue may seem to be harsh, it does not deprive the Appellants of a remedy for any wrong which may have been committed against them. They can (and did in this case) bring an action against the individuals who allegedly wronged them.

¶ 9 I would affirm the summary judgment in favor of State.