2013 OK CIV APP 80

**Kalen LAVENDER, Plaintiff/Appellant,**

v.

**CRAIG GENERAL HOSPITAL, Defendant/Appellee.**

**No. 111138.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 6, 2013.

George Mullican, Christopher D. Wolek, Diane M. Black, Gibbs, Armstrong, Borochoff, Mullican, & Hart, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

W. Michael Hill, Michael D. Goss, Don W. Danz, Secrest, Hill, Butler & Secrest, Tulsa, Oklahoma, for Defendant/Appellee.

JANE P. WISEMAN, Judge.

¶ 1 Plaintiff Kalen Lavender appeals from a trial court order granting Defendant Craig General Hospital's motion to dismiss. This appeal proceeds according to Supreme Court Rule 1.36, 12 O.S.2011, ch. 15, app. 1 [1], without appellate briefing. After review of the record on appeal, we reverse the trial court's order and remand this case for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On July 19, 2005, Plaintiff "underwent a diagnostic laparoscopic procedure, performed by Dr. Thomas J. Byrne at Craig General Hospital." According to the amended petition, Dr. Byrne "sterilized Plaintiff by tubal ligation" without her consent. She was 21 years-old at the time of the surgery. After the operation, Dr. Byrne informed Plaintiff the sterilization was medically necessary. Plaintiff states she believed his representations.

¶ 3 On March 27, 2008, Plaintiff sought reversal of the tubal ligation and was informed by another physician that the tubal ligation was not medically necessary and was not reversible.

¶ 4 On March 25, 2010, Plaintiff initiated a medical negligence action against Dr. Byrne for performing unnecessary medical treatment without her consent and for failing to provide Plaintiff with appropriate medical care. She states Dr. Byrne also "actively concealed the facts relating to the sterilization procedure, his background, credentialing and competency to practice medicine." Plaintiff further asserted claims for intentional infliction of emotional distress and battery against Dr. Byrne and requested punitive damages for Dr. Byrne's wanton and reckless disregard for Plaintiff's rights and for his intentional, malicious conduct.

¶ 5 On March 22, 2012, Plaintiff filed a motion to amend her petition to add Hospital to the lawsuit. Plaintiff states in the motion that after taking the deposition of Nurse Betty Winfrey on August 25, 2011, she determined that Hospital was also medically negligent and should be added as a party to the lawsuit. Dr. Byrne objected to Plaintiff's request to amend the petition to add Hospital. The trial court granted Plaintiff's motion and she filed her amended petition on May 18, 2012. In the amended petition, Plaintiff states that she "has complied with all conditions precedent under the [Governmental Tort Claims Act] GTCA regarding notice to Craig General Hospital."

¶ 6 In response to the amended petition, Hospital filed a special entry of appearance and motion to dismiss alleging that Plaintiff failed to state a claim against it because she did not timely file a notice of tort claim as required by the GTCA. On November 2, 2011, Plaintiff issued her "Notice of Governmental Tort Claim" to Hospital. Hospital asserts the "[n]otice was more than six (6) years after her date of loss which is more than five (5) years after the exclusive one (1) year statute of limitations contained in the [GTCA]," thus barring her claims.

¶ 7 Plaintiff counters that she had no notice of Hospital's negligence until August 25, 2011, the date of Betty Winfrey's deposition. According to Plaintiff, Nurse Winfrey testified that Hospital "[s]taff failed to follow [its] protocol and obtain two witnesses['] initials to the change in operative procedure" and that it "was hospital protocol to take a 'time out' before a tubal ligation was performed.... to give the patient notice and to determine medical necessity." Winfrey testified she could not find the form documenting the "time out" in Plaintiff's case. Plaintiff states that the day after Winfrey's deposition, she submitted a notice of tort claim against Hospital to the "Department of Central Services, Risk Management Division." On September 2, 2011, she was informed by the Department that it did not handle such claims against Hospital. On November 2, 2011, Plaintiff submitted her notice of tort claim directly to Hospital. Plaintiff claims Hospital did not respond to the Notice and it was deemed denied 90 days later.

---

1. The recent amendments to the Supreme Court Rules, found at *In re Amendments to Oklahoma Supreme Court Rules,* 2013 OK 67, —— P.3d ——, 2013 WL 3729211, and effective August 1, 2013, do not substantively change the applicable provisions of Rule 1.36.

¶ 8 The trial court granted Hospital's motion to dismiss and dismissed all claims against Hospital with prejudice.[2]

¶ 9 Plaintiff appeals.

## PROCEDURAL ISSUES

■ ¶ 10 The trial court failed to comply with 12 O.S.2011 § 2012(G) after it granted Hospital's motion to dismiss for failure to state a claim. Section 2012(G) provides in relevant part: "On granting a motion to dismiss a claim for relief, the court shall grant leave to amend if the defect can be remedied and shall specify the time within which an amended pleading shall be filed." 12 O.S. 2011 § 2012(G). "In order for the courts to dismiss a claim for failure to state a cause of action without giving the plaintiff the opportunity to amend, it must appear that the claim does not exist rather than the claim has been defectively stated." *Fanning v. Brown,* 2004 OK 7, ¶ 23, 85 P.3d 841, 848. The trial court dismissed the case without affording Plaintiff an opportunity to amend to plead additional facts sufficient to state a claim under a recognized legal theory or to argue for an extension of existing law to support the claims. However, because we conclude this motion to dismiss must be treated as a motion for summary judgment as discussed below, the "opportunity to amend" provision of § 2012(G) is not applicable.[3]

■ ¶ 11 Title 12 O.S.2011 § 2012(B) provides:

> If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . .

Correspondence to Hospital providing it with notice of a governmental tort claim is attached as an exhibit to Hospital's motion to dismiss for failure to state a claim. In her response to Hospital's motion to dismiss, Plaintiff attaches deposition testimony and additional correspondence regarding the notice of tort claim and she argues the effect of these materials extensively in her response.

¶ 12 Matters outside the pleadings were presented to, and not excluded by, the trial court, and we thus treat Hospital's motion to dismiss as one for summary judgment. *Davis v. Progressive N. Ins. Co.,* 2012 OK CIV APP 98, ¶ 7, 288 P.3d 270, 271 (citing *State ex rel. Wright v. Oklahoma Corp. Comm'n,* 2007 OK 73, ¶ 48, 170 P.3d 1024, 1039)(converting a motion to one for summary judgment because matters outside the pleadings were attached as exhibits including correspondence and affidavits).

## STANDARD OF REVIEW

¶ 13 Because summary judgment resolves issues of law, we review such a judgment *de novo* "pursuant to the plenary power of the appellate courts and without deference to the trial court." *Glasco v. State ex rel. Oklahoma Dep't of Corr.,* 2008 OK 65, ¶ 8, 188 P.3d 177, 181. We will not reverse a grant of summary judgment when the record on appeal establishes no substantial controversy of material fact and that one party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Grp.,* 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045. "The court should not grant summary judgment where reasonable minds could draw different inferences or conclusions from the facts." *Id.*

## ANALYSIS

¶ 14 The question we confront is whether Plaintiff's claims against Hospital are barred as a matter of law pursuant to the provisions

---

2. Plaintiff's claims against Dr. Byrne remain pending. In its September 2012 order of dismissal, the trial court made the express determination pursuant to 12 O.S.2011 § 994(A) that there was no just reason to delay entry of a final order as to Hospital and directed the dismissal to be filed as a final order, and this appeal followed.

3. Judging from the order of dismissal under review, the trial court treated this as a 12 O.S.2011 § 2012(B)(6) motion and dismissed all of Plaintiff's claims against Hospital with prejudice. If the trial court had determined that this motion to dismiss was converted to a motion for summary judgment according to the dictates of § 2012(B), the court's ruling would result in a judgment in Hospital's favor, not a dismissal.

of the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151–200. The GTCA controls lawsuits brought against the State of Oklahoma and political subdivisions. To file a lawsuit against the State or a political subdivision, a plaintiff must first provide written notice of the claim within one year of the date of loss. 51 O.S. Supp.2005 § 156(B). Pursuant to 51 O.S.2011 § 157(A)[4], if the state or political subdivision does not approve the claim within 90 days, it is deemed denied. Section 157(B) then requires plaintiff to file suit within 180 days after denial of the claim.

¶ 15 Plaintiff relies heavily on *Tice v. Pennington,* 2001 OK CIV APP 95, 30 P.3d 1164, in which a child underwent a kidney transplant which failed immediately during the surgery "because the donor kidney was incompatible due to conflicting blood types," thereby making it necessary for his mother to donate a kidney. *Id.* at ¶ 3, 30 P.3d at 1166. According to subsequent facts:

> Neither [child] nor his mother … were informed about the mistakes resulting in the donor kidney failure. The facts and inferences, taken favorably for [child and mother] for purposes of summary judgment, reveal that Pennington and another Hospital employee withheld the facts relative to conflicting blood types and actively concealed those facts from [child and mother]. In addition, the Hospital failed to have adequate procedures, or failed to follow existing procedures, which would prevent the implant of a wrong kidney in a patient. A pattern of errors was documented from sometime prior to [child's] kidney rejection in 1991 and through ensuing years and came close to replicating the mismatch of kidneys in others.

*Id.* at ¶ 4, 30 P.3d at 1166. Around March 1996, another physician became aware of the hospital's inadequacies as well as the fact that mother and child had not been informed of the reason for the transplant failure and for mother's need to donate her kidney. *Id.* at ¶ 5, 30 P.3d at 1167. After February 1998, the physician contacted the child's current physician who in May 1998 informed the mother and child of the reason for the transplant failure. *Id.* In August 1998, a tort

claim was filed and subsequently rejected. *Id.* at ¶ 6, 30 P.3d at 1167. The hospital moved for summary judgment, arguing the claims were barred because they were not presented within one year from the date of the surgery as required by 51 O.S. § 156(B). *Id.* at ¶¶ 6, 10, 30 P.3d at 1167–68. The hospital further argued the date of discovery did not apply. *Id.* at ¶ 6, 30 P.3d at 1167. The trial court granted summary judgment to the hospital. *Id.*

¶ 16 The issue on appeal in *Tice* was the following:

> whether the failure to file a claim against the State within the statute's stated time limits results in the claim being barred under 51 O.S.1991, § 156(B) when the claim, which is being asserted, is not known because the State employees have actively prevented a claimant from discovery of the facts supporting a claim within the statute's stated time limits.

*Id.* at ¶ 13, 30 P.3d at 1168. The Court concluded that mother and child had established the existence of fact questions that invoked estoppel and "diligence-discovery" or discovery rule principles. *Id.* at ¶ 31, 30 P.3d at 1172. As to estoppel, the Court held:

> [T]he prevailing public interests, which except this case from the general estoppel rule, are the public's interest in speedy investigation of claims without cover-up by state employees and the public's interest in proficient medical care unimpeded by a prevarication, concealment, and/or misrepresentation. These prevailing interests outweigh any reasonable premise to protect the public's interest fostered by the time-bar in Section 156(B) of the [GTCA]. This conclusion is bolstered, as stated before, by the fact that the governmental conduct in this case served in large measure to thwart the very interests served by the Act.

*Id.* at ¶ 27, 30 P.3d at 1171. As to application of the "diligence-discovery" rule, the Court concluded:

> [W]henever the government acts to conceal from a prospective plaintiff the knowledge of the injury, or knowledge that could lead

4. We cite the most current version of this statute; however, it remains unchanged since 1995.

to the basic facts of the injury, that is, knowledge of the injury's existence and knowledge of its cause, then the obligation to present a claim does not accrue until the potential plaintiff acquires such knowledge, or should have acquired such knowledge. The prospective plaintiff need not have exact knowledge. The claims accrue when the plaintiff knows, or reasonably should know, of enough critical facts about the injury and its cause to protect himself or herself by seeking legal assistance.

*Id.* at ¶ 30, 30 P.3d at 1171. Applying these rulings to the plaintiffs' claims, the *Tice* Court held that the plaintiffs raised questions of fact regarding the elements of estoppel and the "diligence-discovery" rule which precluded summary judgment for the hospital. *Id.* at ¶ 40, 30 P.3d at 1173. The Court reversed the trial court's summary judgment and remanded for further proceedings. *Id.* at ¶ 42, 30 P.3d at 1173.

¶ 17 In the present case, the timeline of relevant events is as follows:

- July 19, 2005: Plaintiff's tubal ligation procedure
- March 27, 2008: Plaintiff is informed by another physician that the procedure was irreversible and not medically necessary.
- March 25, 2010: Plaintiff files a lawsuit against Dr. Byrne alleging he "actively concealed the facts relating to the sterilization procedure, his background, credentialing and competency to practice medicine."
- August 25, 2011: Deposition of Nurse Winfrey
- November 2, 2011: Notice of Governmental Tort Claim
- May 18, 2012: Plaintiff files an amended petition adding Hospital as a defendant.

¶ 18 Plaintiff states in her petition that Dr. Byrne informed her that the sterilization was medically necessary and that she believed his representations. For reasons unstated, it was not until March 27, 2008, that she consulted a physician to reverse the tubal ligation and was told "there was no medical necessity for the tubal ligation performed by Dr. Thomas J. Byrne and that the procedure was irreversible."

¶ 19 Plaintiff then filed suit against Dr. Byrne and undertook discovery. Plaintiff claims that it was during the deposition of Betty Winfrey, R.N., on August 25, 2011, that she first learned that she might have a claim against Hospital. Nurse Winfrey was the pre-operative and post-operative nurse for Plaintiff on the day of her surgery. She testified that Plaintiff's consent form did not list tubal ligation as a procedure but tubal ligation was listed in the post-operative report. She testified that when there is a change in operative procedure, hospital policy is to obtain two witnesses' initials. Nurse Winfrey further testified it was hospital policy to take a "time out" in the operating room before undertaking the surgery to verify with the patient, physician, and everyone else in the room what surgery the patient was undergoing. Nurse Winfrey could not find the form in Plaintiff's chart documenting that a "time out" was taken.

¶ 20 The issue presented on appeal is whether Plaintiff gave timely written notice of her governmental tort claim within one year of the date of her loss. But this question cannot be answered without determining the applicability of the discovery rule in ascertaining whether Plaintiff properly gave notice within the prescribed one-year period.

¶ 21 The discovery rule is:

designed to allow limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. Where applicable, the discovery rule tolls the limitations period until a plaintiff learns of an injury and, through prudent investigation, can obtain sufficient facts to state a cause of action.

*Woods v. Prestwick House, Inc.,* 2011 OK 9, ¶ 3, 247 P.3d 1183, 1186. The Oklahoma Supreme Court in *Woods,* holding that the discovery rule applied in an action brought pursuant to 12 O.S. § 1449 for unauthorized use and publication of the plaintiff's photograph, acknowledged that the discovery rule has been applied in Oklahoma in suits for libel, for breach of fiduciary duty, for conversion or theft, for cumulative injury under the Federal Employers' Liability Act, and under

the GTCA where the government actively concealed facts giving rise to the plaintiff's claim. *Id.* at ¶¶ 25–26, 247 P.3d at 1190.

¶ 22 In this last instance, the Supreme Court cited *Tice* in recognizing the application of the discovery rule in a GTCA case. *Id.* at n. 37, 247 P.3d 1183. As in *Tice* as recognized by the Supreme Court, the record here invokes the application of the discovery rule to determine timely notice for purposes of § 156(B) of the GTCA. Based on our review of the record, we conclude the discovery rule applies in this case, but whether— and for how long—the one-year notice period is tolled pursuant to the discovery rule remain issues of fact to be decided.

¶ 23 The *Woods* Court stated:

The rule allows limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. It is applied to delay the running of the statute of limitations. . . . Its purpose is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury.

*Id.* at ¶ 24, 247 P.3d at 1189–90 (citations omitted).

¶ 24 " 'The question of when [a plaintiff] possessed sufficient information to trigger the running of the statute of limitations is one of fact.' " *Hawk Wing v. Lorton,* 2011 OK 42, ¶ 18, 261 P.3d 1122, 1127 (quoting *Gallagher v. Enid Reg'l Hosp.,* 1995 OK 137, ¶ 11, 910 P.2d 984, 986). " '[W]hether plaintiffs have used diligence in discovery, or should, as reasonably prudent persons have been put on inquiry and investigation from what they heard, or knew, was a question to be determined in the trial court, on the basis of the facts and circumstances of the particular case.' " *Id.* (quoting *Flowers v. Stanley,* 1957 OK 237, ¶ 15, 316 P.2d 840, 847).

¶ 25 A trier of fact here may conclude when the evidence is presented that Dr. Byrne's decision to perform a tubal ligation without consent was sufficient to require Plaintiff to seek further medical advice regarding its reversal and/or medical necessity.

However, because Plaintiff stated she believed Dr. Byrne when he said the procedure was medically necessary, other reasonable minds might conclude that reasonable diligence under the circumstances did not require her to seek another physician's opinion immediately or to forthwith pursue legal action against Dr. Byrne, particularly if he and/or others misrepresented or concealed facts allowing her to make such a discovery. *Id.* at ¶ 19 & n. 3, 261 P.3d at 1127–28 (citing *Redwine v. Baptist Med. Ctr. of Oklahoma, Inc.,* 1983 OK 55, ¶ 9, 679 P.2d 1293, 1295)(finding that whether a statement made by a physician to the plaintiff constituted fraudulent concealment thereby tolling the statute of limitations was a question of fact for the jury).

¶ 26 Viewing the evidence in the light most favorable to Plaintiff, we conclude that a substantial controversy exists as to whether she knew, or was able to discover with reasonable diligence, that a cause of action existed against Hospital stemming from the July 19, 2005, surgery any earlier than Nurse Winfrey's August 25, 2011, deposition. "Where reasonable persons might reach different inferences or conclusions involving the underlying disputed facts about an injury's discovery, the question of when the plaintiff knew or should have known is a question of fact for the trier of fact to decide." *Woods,* 2011 OK 9 at ¶ 34, 247 P.3d at 1192. The trial court's order granting Hospital's motion to dismiss is reversed and the case remanded for further proceedings.

### CONCLUSION

¶ 27 For the reasons stated above, the trial court's order granting Hospital's motion to dismiss is reversed, and this case is remanded for further proceedings.

¶ 28 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, V.C.J., and FISCHER, P.J., concur.