2015 OK CIV APP 43

Ted BENTLEY and Rita Bentley,
Plaintiffs/Appellants,

v.

Clint KIRK, D.O. and Comanche, County Memorial Hospital Authority, d/b/a Comanche County Memorial Hospital, Defendants/Appellees,

and

Smith & Nephew, Inc., Defendant.

No. 113,127.

Court of Civil Appeals of Oklahoma,
Division No. 4.

April 8, 2015.

Micky Walsh, Jerry Fraley, Derek Franseen, Beeler, Walsh & Walsh, PLLC, Oklahoma City, OK, for Plaintiffs/Appellants.

Glen D. Huff, Robert D. Hoisington, Lindsey D. Parke, Foliart, Huff, Ottaway & Bottom, Oklahoma City, OK, for Defendants/Appellees Clint Kirk, D.O. and Comanche County Memorial Hospital.

P. THOMAS THORNBRUGH, Judge.

¶ 1 Plaintiffs Ted Bentley and Rita Bentley appeal the summary judgment of the district court holding that Defendants Dr. Clint Kirk and Comanche County Memorial Hospital (Hospital) cannot be sued for medical malpractice. We vacate both grants of summary judgment.

## BACKGROUND

¶ 2 Plaintiffs allege that Dr. Kirk was negligent in the insertion of a prosthetic knee device. In November 2010, Dr. Kirk implanted a metal knee device in Ted Bentley. On May 2, 2011, this device was removed by Dr. Kirk because Mr. Bentley had an allergic reaction to the metal. Dr. Kirk replaced the metal device with a knee made by Defendant Smith & Nephew, Inc.[1] On May 24, 2011, Dr. Kirk performed a third surgery to replace part of the new Smith & Nephew knee implant. Mr. Bentley, however, continued to experience problems with the knee implant,

and consulted another physician, Dr. Stephen Wilson. On August 8, 2011, Dr. Wilson performed another surgical revision of the Smith & Nephew knee implant.

¶ 3 On July 13, 2012, Plaintiffs sent notice of a medical negligence claim to Hospital pursuant to the Governmental Tort Claims Act (GTCA), 51 O.S.2011 § 156(B). Dr. Kirk and Hospital replied with a joint motion to dismiss. Dr. Kirk argued he was an employee of Hospital acting within the scope of his employment, and hence personally immune from suit. He attached a personal affidavit stating that he was an employee of Hospital. Hospital argued that the last surgery performed by Dr. Kirk occurred on May 2, 2011, but Plaintiffs had not sent GTCA notice until July 13, 2012, and hence Plaintiffs had failed to give notice within the one-year period specified by § 156(B).

¶ 4 The trial court chose to treat the motion to dismiss as a motion for summary judgment. Plaintiffs filed a motion for continuance pursuant to District Court Rule 13(d), seeking time for discovery regarding Dr. Kirk's employment status, which the court tacitly denied by its failure to rule on the motion. On September 18, 2013, the court granted summary judgment to Dr. Kirk on the grounds that he was an employee of Hospital, and to Hospital on the grounds that Plaintiffs had given notice outside the one-year period specified by § 156(B). Plaintiffs filed a motion for new trial, which the court denied. Plaintiffs now appeal.

## STANDARD OF REVIEW

¶ 5 Summary judgment settles only questions of law. *See Pickens v. Tulsa Metropolitan Ministry*, 1997 OK 152, ¶ 7, 951 P.2d 1079. The standard of review of questions of law is *de novo*. *Id.* Plaintiff filed a motion for new trial in this case. However, the exercise of the district court's discretion in deciding this motion is decided by our *de novo* review of the underlying summary judgment. *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100

1. The allegations of negligence do not encompass this first knee replacement.

¶ 6 Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Pickens*, n. 1. Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts. *Edwards v. City of Sallisaw*, 2014 OK 86, ¶ 7, 339 P.3d 870.

## ANALYSIS

### I. LIABILITY OF HOSPITAL

¶ 7 This appeal concerns the interaction of the statutory GTCA notice period and the "discovery rule." Hospital argues that GTCA notice pursuant to 51 O.S.2011 § 156(B) must be made within one year of an act of negligence, and this time is not tolled unless the plaintiff can show "active concealment" of the negligence by the GTCA entity. Hospital argued that there was no allegation of active concealment in this case, and hence Plaintiffs did not give the required GTCA notice within the statutory one-year period.

¶ 8 This area of law is one that has not been definitively addressed by the Oklahoma Supreme Court. The question arises from subsection B of § 156, which states:

B. Except as provided in subsection H of this section, and notwithstanding any other provision of law, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

Subsection H deal with claims based on wrongful felony conviction resulting in imprisonment, and is therefore not significant in this case.

¶ 9 The § 156(B) requirement that a claim be presented within one year of the *date the loss occurs* has been examined in a limited number of malpractice cases. In *Tice v. Pennington*, 2001 OK CIV APP 95, ¶¶ 23–26, 30 P.3d 1164, Division II of this Court found a form of tolling applicable to this time bar, noting that the application of § 156(B) to

medical malpractice occurring at a state-operated hospital presented a particular public policy question.

¶ 10 In *Tice*, plaintiff Tice underwent a kidney transplant. The transplant failed immediately, while Tice was still on the operating table, because the donor kidney was incompatible due to erroneous blood typing. Tice's mother, Linda Welch, provided a kidney on an emergency basis. Tice's physician did not inform Tice or Welch of the reason for the donor kidney transplant failure for almost seven years. *Id.*, ¶¶ 4–5. *Tice* also indicates that Welch was induced to give up the kidney on an emergency basis because of a misrepresentation to both of them that the rejection of the donor kidney had been occasioned by a rare blood disorder, with the implication that Tice might otherwise never qualify for a donor kidney. *Id.*, ¶.26. When Tice and Welch sued, the hospital interposed the § 156(B) time bar.

¶ 11 The *Tice* opinion examined several estoppel and tolling theories regarding the § 156(B) time bar, and stated:

Hence, the prevailing public interests, which except this case from the general estoppel rule, are the public's interest in speedy investigation of claims without cover-up by state employees and the public's interest in proficient medical care unimpeded by a prevarication, concealment, and/or misrepresentation. These prevailing interests outweigh any reasonable premise to protect the public's interest fostered by the time-bar in Section 156(B) of the Governmental Tort Claims Act. This conclusion is bolstered, as stated before, by the fact that the governmental conduct in this case served in large measure to thwart the very interests served by the Act.

*Id.*, ¶ 27. Hospital petitioned for certiorari in *Tice*, but the docket sheet indicates the case was settled, and the petition withdrawn. Hence, the Supreme Court did not have the opportunity to take or deny certiorari of the opinion.

¶ 12 Some twelve years after *Tice*, Division II again examined § 156(B) in *Lavender v. Craig Gen. Hosp.*, 2013 OK CIV APP 80, 308 P.3d 1071. In *Lavender*, plaintiff "underwent a diagnostic laparoscopic procedure at

Craig General Hospital." According to the petition, plaintiff was "sterilized by tubal ligation" without her consent during this procedure. After the operation, the involved physician informed plaintiff that the sterilization was medically necessary. Three years later, plaintiff was informed by another physician that the tubal ligation was not medically necessary and was not reversible. Plaintiff sued the physician some five years after the procedure. During discovery, plaintiff deposed a staff nurse from the Hospital's operating room who testified that Hospital "[s]taff failed to follow [its] protocol and obtain two witnesses['] initials to the change in operative procedure" and that it "was hospital protocol to take a 'time out' before a tubal ligation was performed.... to give the patient notice and to determine medical necessity." *Id.*, ¶ 7. Plaintiff then added the hospital as a defendant, and the hospital interposed the § 156(B) time bar.

¶ 13 The *Lavender* opinion stated a more or less conventional discovery rule pursuant to the facts of that case.

> The question of when [a plaintiff] possessed sufficient information to trigger the running of the statute of limitations is one of fact. *Hawk Wing v. Lorton*, 2011 OK 42, ¶ 18, 261 P.3d 1122, 1127 (quoting *Gallagher v. Enid Reg'l Hosp.*, 1995 OK 137, ¶ 11, 910 P.2d 984, 986). [W]hether plaintiffs have used diligence in discovery, or should, as reasonably prudent persons have been put on inquiry and investigation from what they heard, or knew, was a question to be determined in the trial court, on the basis of the facts and circumstances of the particular case. *Id.* (quoting *Flowers v. Stanley*, 1957 OK 237, ¶ 15, 316 P.2d 840, 847).

*Id.*, ¶ 24 (internal quotation marks omitted).

¶ 14 *Lavender* vacated summary judgment to the hospital, even though the hospital was not notified within one year after surgery, stating that "a substantial controversy exists as to whether [plaintiff] knew, or was able to discover with reasonable diligence, that a cause of action existed against Hospital stemming from the July 19, 2005, surgery any earlier than Nurse Winfrey's August 25, 2011, deposition." *Id.*, ¶ 26. No party, however, sought certiorari of the *Lavender* opinion. As a result, neither of the two published opinions dealing with this issue were challenged by a certiorari proceeding. It now falls to this panel to make a third ruling on this issue.

## II.  SECTION 156(B)

■ ¶ 15 The debate centers on what the Legislature intended by its command that "claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs." Did the Legislature essentially intend a statute of repose, i.e., to restrict liability "by limiting the time during which a cause can arise" and thus "serve to bar a cause of action before it accrues?"[2] In the alternative, did it intend a statute of limitations which affects the remedy but not the right, and is traditionally subject to a discovery rule?

■ ¶ 16 By its nature, a statute of repose may start a limitation period running before an injury or loss comes into being by using an event other than the date of accrued harm to start the limitation period.[3] The term "loss" is defined in the Act. "Loss" means death or injury to the body or rights of a person or damage to real or personal property or rights therein. 51 O.S.2011 § 152(6). The Legislature's use of the

---

**2.**  *See Smith v. Westinghouse Elec. Corp.*, 1987 OK 3, n. 11, 732 P.2d 466.

**3.**  For example, in the following statutes of repose, the Legislature did not use the occurrence of loss or the date of injury as the triggering event: Title 46 O.S.2011 § 301 (foreclosure remedies limited to "seven (7) years from the **date of the last maturing obligation** secured by such mortgage"); 12 O.S.2011 § 109 (tort action for deficiency in the design, planning, supervision or construction of an improvement to real property, "shall not be brought more than **ten (10) years after substantial completion of such an improvement**"); 71 O.S.2011 § 1–509 (civil suit pursuant to section. 10 of Oklahoma Uniform Securities Act must be "commenced within **one year after the violation occurred**"); 60 O.S.2011 § 837 (action for failing to disclose real property defect shall be commenced "within two **(2) years after the date of transfer of real property** subject to this act") (emphasis added in all cases).

phrase "within one (1) year of the date the loss occurs" is thus not consistent with the language it normally uses to create a statute of repose. The date of an *act of negligence* and the date of an *actual resulting loss* are not necessarily the same. Had the Legislature wished to start the one-year period on the date of the negligence or other tortious act, it could have stated so.

¶ 17 Examining the history of § 156(B), the original 1978 version of the statute barred claims after *180 days.* We must therefore conclude either: 1) that the 1978 Legislature intended to limit malpractice claims against GTCA entities to claims that accrue within 180 days. *i.e.,* one quarter of the time that private sector doctors and hospitals must bear the risk of suit; or 2) that the phrase "the date the loss occurs" implied some form of tolling by discovery.

¶ 18 The purpose of the 180–day/one–year notice period is explained in *Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 2003 OK 2, 63 P.3d 535, as follows:

> The notice provisions contained in the Act are intended to further protect municipal interests by promoting prompt investigation, providing the opportunity to repair any dangerous condition and for speedy and amicable settlement of meritorious claims, and to prepare to meet possible fiscal liabilities.

*Id.,* ¶ 17, citing *Duncan v. City of Nichols Hills*, 1996 OK 16, 913 P.2d 1303.

¶ 19 We find it clear that § 156(B) is designed to ensure that a GTCA entity receives prompt notice of claims to further the above-stated public purposes. However, none of these public purposes are apparently served by denying a meritorious claim that has not yet accrued.

¶ 20 If a claim has not yet accrued, it cannot be "promptly investigated." Nor can a dangerous condition be recognized and repaired, nor can a potential claim be "amicably settled" if injury has not yet accrued or been reasonably discovered.[4] We are not of the opinion that § 156(B) shows a legislative intent to create a strict statute of repose that destroys a medical malpractice claim if the resulting harm did not accrue for more than a year after the negligence.[5]

## III. THE CASE LAW

¶ 21 Hospital argues that, pursuant to *Tice,* Plaintiff *must* show "active concealment" by Hospital to toll the § 156(B) limitation period, i.e., that *Tice* limited any tolling to that specific situation. We find no such limitation in *Tice.* At various points, *Tice* states that: "whenever the government acts to conceal from a prospective plaintiff the knowledge of the injury ... then the obligation to present a claim does not accrue ..." *Tice,* ¶ 30. At no time, however, does *Tice* state that tolling is available *exclusively* because of active concealment.

¶ 22 Examining *Lavender,* it is quite clear that the opinion allowed the hospital to be added as a defendant outside the § 156(B) notice period because "a substantial controversy exists as to whether [plaintiff] knew, or was able to discover with reasonable diligence, that a cause of action existed against Hospital stemming from the July 19, 2005, surgery any earlier than Nurse Winfrey's August 25, 2011, deposition." 2013 OK CIV APP 80, ¶ 26, 308 P.3d 1071. *Lavender* thus states the conventional discovery rule of *Hawk Wing v. Lorton,* 2011 OK 42, ¶ 18, 261 P.3d 1122, and does not rely entirely on active concealment by the hospital.

¶ 23 We find the structure of § 156(B) and the accompanying case law indicate that a conventional discovery rule applies to medical malpractice cases brought against state entities. The record does not indicate that

---

4. We further note that *government health care providers compete directly with private enterprises in this field.* We find no public purpose in allowing state health-care providers to avoid legitimate but unaccrued claims while the private providers with whom they compete are subject to this liability.

5. As a simple example, consider a GTCA health provider that negligently implants a heart valve so it will last only 14 months instead of the expected 20 years. The problem is not discovered until the valve fails. Did the Legislature intend to completely immunize such acts? We find no apparent service of a public purpose in such a restriction.

summary judgment was appropriate pursuant to such a rule. We therefore reverse the grant of summary judgment to Hospital.

## IV. THE LIABILITY OF DR. KIRK.

 ¶ 24 The court also granted summary judgment to Dr. Kirk on the grounds that he was an employee of Hospital. Plaintiff requested a continuance pursuant to District Court Rule 13(d), seeking discovery on this question. The court did not mention this request in its judgment, and we find no record that it considered the Rule 13(d) request at all. The court apparently found the statement of employment made by affidavit in Dr. Kirk's motion to dismiss to be undisputed evidence, and that further discovery could not, as a matter of law, support any other conclusion.

¶ 25 Dr. Kirk's affidavit seeks to relieve him of personal liability in this matter, and is thus inherently self-interested. Its credibility should therefore be tested by a jury unless it is supported by other evidence. *See Poafpybitty v. Skelly Oil Co.*, 1973 OK 110, ¶ 17 517 P.2d 432. No other evidence was provided.[6] Although proper inquiry may eventually prove that Dr. Kirk is indeed an employee of Hospital, *the established standards and procedures of summary judgment may not be circumvented by "converting" a motion to dismiss into a motion for summary judgment.* If a court treats a motion to dismiss as a motion for summary judgment, it must apply the full forensic inquiry required by the summary judgment standards and procedure. We therefore vacate the grant of summary judgment to Dr. Kirk.

## CONCLUSION

¶ 26 We find that the one-year period which § 156(B) provides to raise this claim of medical malpractice is tolled by the discovery rule, as stated in *Hawk Wing v. Lorton,* 2011 OK 42, 261 P.3d 1122. The court did not consider this rule in granting summary judgment. The employment status of Dr. Kirk was demonstrated only by a self-interested

affidavit that could not act as a basis for summary judgment. We therefore vacate both grants of summary judgment by the district court.

¶ 27 **VACATED.**

RAPP, P.J., and BARNES, J., concur.

---

6. Plaintiffs' petition alleged that Dr. Kirk may or may not be an employee. The affidavit alleges only that Dr. Kirk was "employed" by Hospital, but not that he was acting within the scope of his employment.