OSCN Found Document:BENTLEY v. KIRK

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BENTLEY v. KIRK
2015 OK CIV APP 43
348 P.3d 1112
Case Number: 113127
Decided: 04/08/2015
Mandate Issued: 05/07/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 43, 348 P.3d 1112

 

TED BENTLEY and RITA BENTLEY, 
Plaintiffs/Appellants,
v.
CLINT KIRK, D.O. and COMANCHE, COUNTY MEMORIAL 
HOSPITAL AUTHORITY, d/b/a COMANCHE COUNTY MEMORIAL HOSPITAL, 
Defendants/Appellees,
and
SMITH & NEPHEW, INC., Defendant.

APPEAL FROM THE DISTRICT COURT OF
COMANCHE COUNTY, 
OKLAHOMA
HONORABLE GERALD F. NEUWIRTH, TRIAL JUDGE

VACATED

Micky Walsh, Jerry Fraley, Derek Franseen, BEELER, WALSH & WALSH, PLLC, 
Oklahoma City, Oklahoma, for Plaintiffs/Appellants
Glen D. Huff, Robert D. 
Hoisington, Lindsey D. Parke, FOLIART, HUFF, OTTAWAY & BOTTOM, Oklahoma 
City, Oklahoma, for Defendants/Appellees Clint Kirk, D.O. and Comanche County 
Memorial Hospital


P. THOMAS THORNBRUGH, JUDGE:
¶1 Plaintiffs Ted Bentley and Rita Bentley appeal the summary judgment of the 
district court holding that Defendants Dr. Clint Kirk and Comanche County 
Memorial Hospital (Hospital) cannot be sued for medical malpractice. We vacate 
both grants of summary judgment.
BACKGROUND
¶2 Plaintiffs allege that Dr. Kirk was negligent in the insertion of a 
prosthetic knee device. In November 2010, Dr. Kirk implanted a metal knee device 
in Ted Bentley. On May 2, 2011, this device was removed by Dr. Kirk because Mr. 
Bentley had an allergic reaction to the metal. Dr. Kirk replaced the metal 
device with a knee made by Defendant Smith & Nephew, Inc.[1] On May 24, 2011, Dr. Kirk 
performed a third surgery to replace part of the new Smith & Nephew knee 
implant. Mr. Bentley, however, continued to experience problems with the knee 
implant, and consulted another physician, Dr. Stephen Wilson. On August 8, 2011, 
Dr. Wilson performed another surgical revision of the Smith & Nephew knee 
implant.
¶3 On July 13, 2012, Plaintiffs sent notice of a medical negligence claim to 
Hospital pursuant to the Governmental Tort Claims Act (GTCA), 51 O.S.2011 § 156(B). Dr. Kirk and 
Hospital replied with a joint motion to dismiss. Dr. Kirk argued he was an 
employee of Hospital acting within the scope of his employment, and hence 
personally immune from suit. He attached a personal affidavit stating that he 
was an employee of Hospital. Hospital argued that the last surgery performed by 
Dr. Kirk occurred on May 2, 2011, but Plaintiffs had not sent GTCA notice until 
July 13, 2012, and hence Plaintiffs had failed to give notice within the 
one-year period specified by § 156(B).
¶4 The trial court chose to treat the motion to dismiss as a motion for 
summary judgment. Plaintiffs filed a motion for continuance pursuant to District 
Court Rule 13(d), seeking time for discovery regarding Dr. Kirk's employment 
status, which the court tacitly denied by its failure to rule on the motion. On 
September 18, 2013, the court granted summary judgment to Dr. Kirk on the 
grounds that he was an employee of Hospital, and to Hospital on the grounds that 
Plaintiffs had given notice outside the one-year period specified by § 156(B). 
Plaintiffs filed a motion for new trial, which the court denied. Plaintiffs now 
appeal.
STANDARD OF REVIEW
¶5 Summary judgment settles only questions of law. See Pickens v. Tulsa 
Metropolitan Ministry, 1997 OK 
152, ¶ 7, 951 P.2d 1079. The 
standard of review of questions of law is de novo. Id. Plaintiff 
filed a motion for new trial in this case. However, the exercise of the district 
court's discretion in deciding this motion is decided by our de novo 
review of the underlying summary judgment. Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100
¶6 Summary judgment will be affirmed only if the appellate court determines 
that there is no dispute as to any material fact and that the moving party is 
entitled to judgment as a matter of law. Pickens, n.1. Summary judgment 
will be reversed if the appellate court determines that reasonable men might 
reach different conclusions from the undisputed material facts. Edwards v. 
City of Sallisaw, 2014 OK 
86, ¶ 7, 339 P.3d 870.
ANALYSIS
I. LIABILITY OF HOSPITAL
¶7 This appeal concerns the interaction of the statutory GTCA notice period 
and the "discovery rule." Hospital argues that GTCA notice pursuant to 51 O.S.2011 § 156(B) must be made 
within one year of an act of negligence, and this time is not tolled unless the 
plaintiff can show "active concealment" of the negligence by the GTCA entity. 
Hospital argued that there was no allegation of active concealment in this case, 
and hence Plaintiffs did not give the required GTCA notice within the statutory 
one-year period.
¶8 This area of law is one that has not been definitively addressed by the 
Oklahoma Supreme Court. The question arises from subsection B of § 156, which 
states:

 
 B. Except as provided in subsection H of this section, and not- 
 withstanding any other provision of law, claims against the state or a 
 political subdivision are to be presented within one (1) year of the date 
 the loss occurs. A claim against the state or a political subdivision shall 
 be forever barred unless notice thereof is presented within one (1) year 
 after the loss occurs.
Subsection H deal with claims based on wrongful felony conviction resulting 
in imprisonment, and is therefore not significant in this case.
¶9 The § 156(B) requirement that a claim be presented within one year of the 
date the loss occurs has been examined in a limited number of malpractice 
cases. In Tice v. Pennington, 2001 OK CIV APP 95, ¶¶ 23-26 , 30 P.3d 1164, Division II of this 
Court found a form of tolling applicable to this time bar, noting that the 
application of § 156(B) to medical malpractice occurring at a state-operated 
hospital presented a particular public policy question.
¶10 In Tice, plaintiff Tice underwent a kidney transplant. The 
transplant failed immediately, while Tice was still on the operating table, 
because the donor kidney was incompatible due to erroneous blood typing. Tice's 
mother, Linda Welch, provided a kidney on an emergency basis. Tice's physician 
did not inform Tice or Welch of the reason for the donor kidney transplant 
failure for almost seven years. Id., ¶¶ 4-5. Tice also indicates 
that Welch was induced to give up the kidney on an emergency basis because of a 
misrepresentation to both of them that the rejection of the donor kidney had 
been occasioned by a rare blood disorder, with the implication that Tice might 
otherwise never qualify for a donor kidney. Id., ¶26. When Tice and Welch 
sued, the hospital interposed the § 156(B) time bar.
¶11 The Tice opinion examined several estoppel and tolling theories 
regarding the § 156(B) time bar, and stated:

 
 Hence, the prevailing public interests, which except this case from the 
 general estoppel rule, are the public's interest in speedy investigation of 
 claims without cover-up by state employees and the public's interest in 
 proficient medical care unimpeded by a prevarication, concealment, and/or 
 misrepresentation. These prevailing interests outweigh any reasonable 
 premise to protect the public's interest fostered by the time-bar in Section 
 156(B) of the Governmental Tort Claims Act. This conclusion is bolstered, as 
 stated before, by the fact that the governmental conduct in this case served 
 in large measure to thwart the very interests served by the 
 Act.
Id., ¶ 27. Hospital petitioned for certiorari in Tice, but the 
docket sheet indicates the case was settled, and the petition withdrawn. Hence, 
the Supreme Court did not have the opportunity to take or deny certiorari of the 
opinion.
¶12 Some twelve years after Tice, Division II again examined § 156(B) 
in Lavender v. Craig Gen. Hosp., 2013 OK CIV APP 80, 308 P.3d 1071. In Lavender, 
plaintiff "underwent a diagnostic laparoscopic procedure at Craig General 
Hospital." According to the petition, plaintiff was "sterilized by tubal 
ligation" without her consent during this procedure. After the operation, the 
involved physician informed plaintiff that the sterilization was medically 
necessary. Three years later, plaintiff was informed by another physician that 
the tubal ligation was not medically necessary and was not reversible. Plaintiff 
sued the physician some five years after the procedure. During discovery, 
plaintiff deposed a staff nurse from the Hospital's operating room who testified 
that Hospital "[s]taff failed to follow [its] protocol and obtain two 
witnesses['] initials to the change in operative procedure" and that it "was 
hospital protocol to take a 'time out' before a tubal ligation was performed. . 
. . to give the patient notice and to determine medical necessity." Id., 
¶ 7. Plaintiff then added the hospital as a defendant, and the hospital 
interposed the § 156(B) time bar.
¶13 The Lavender opinion stated a more or less conventional discovery 
rule pursuant to the facts of that case.

 
 The question of when [a plaintiff] possessed sufficient information to 
 trigger the running of the statute of limitations is one of fact. Hawk 
 Wing v. Lorton, 2011 OK 
 42, ¶ 18, 261 P.3d 1122, 
 1127 (quoting Gallagher v. Enid Reg'l Hosp., 1995 OK 137, ¶ 11, 910 P.2d 984, 986). [W]hether 
 plaintiffs have used diligence in discovery, or should, as reasonably 
 prudent persons have been put on inquiry and investigation from what they 
 heard, or knew, was a question to be determined in the trial court, on the 
 basis of the facts and circumstances of the particular case. Id. 
 (quoting Flowers v. Stanley, 1957 OK 237, ¶ 15, 316 P.2d 840, 
 847).
Id., ¶ 24 (internal quotation marks omitted).
¶14 Lavender vacated summary judgment to the hospital, even though the 
hospital was not notified within one year after surgery, stating that "a 
substantial controversy exists as to whether [plaintiff] knew, or was able to 
discover with reasonable diligence, that a cause of action existed against 
Hospital stemming from the July 19, 2005, surgery any earlier than Nurse 
Winfrey's August 25, 2011, deposition." Id., ¶ 26. No party, however, 
sought certiorari of the Lavender opinion. As a result, neither of the 
two published opinions dealing with this issue were challenged by a certiorari 
proceeding. It now falls to this panel to make a third ruling on this issue.
II. SECTION 156(B)
¶15 The debate centers on what the Legislature intended by its command that 
"claims against the state or a political subdivision are to be presented within 
one (1) year of the date the loss occurs." Did the Legislature essentially 
intend a statute of repose, i.e., to restrict liability "by limiting the time 
during which a cause can arise" and thus "serve to bar a cause of action before 
it accrues?"[2] 
In the alternative, did it intend a statute of limitations which affects the 
remedy but not the right, and is traditionally subject to a discovery rule?
¶16 By its nature, a statute of repose may start a limitation period running 
before an injury or loss comes into being by using an event other than the date 
of accrued harm to start the limitation period.[3] The term "loss" is defined in the Act. 
"Loss" means death or injury to the body or rights of a person or damage to real 
or personal property or rights therein. 51 O.S.2011 § 152(6). The 
Legislature's use of the phrase "within one (1) year of the date the loss 
occurs" is thus not consistent with the language it normally uses to create a 
statute of repose. The date of an act of negligence and the date of an 
actual resulting loss are not necessarily the same. Had the 
Legislature wished to start the one-year period on the date of the negligence or 
other tortious act, it could have stated so.
¶17 Examining the history of § 156(B), the original 1978 version of the 
statute barred claims after 180 days. We must therefore conclude either: 
1) that the 1978 Legislature intended to limit malpractice claims against GTCA 
entities to claims that accrue within 180 days. i.e., one quarter of the 
time that private sector doctors and hospitals must bear the risk of suit; or 2) 
that the phrase "the date the loss occurs" implied some form of tolling by 
discovery.
¶18 The purpose of the 180-day/one-year notice period is explained in 
Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of 
State, 2003 OK 2, 63 P.3d 535, as follows:

 
 The notice provisions contained in the Act are intended to further 
 protect municipal interests by promoting prompt investigation, providing the 
 opportunity to repair any dangerous condition and for speedy and amicable 
 settlement of meritorious claims, and to prepare to meet possible fiscal 
 liabilities.
Id., ¶ 17, citing Duncan v. City of Nichols Hills, 1996 OK 16, 913 P.2d 1303.
¶19 We find it clear that § 156(B) is designed to ensure that a GTCA entity 
receives prompt notice of claims to further the above-stated public purposes. 
However, none of these public purposes are apparently served by denying a 
meritorious claim that has not yet accrued.
¶20 If a claim has not yet accrued, it cannot be "promptly investigated." Nor 
can a dangerous condition be recognized and repaired, nor can a potential claim 
be "amicably settled" if injury has not yet accrued or been reasonably 
discovered.[4] 
We are not of the opinion that § 156(B) shows a legislative intent to create a 
strict statute of repose that destroys a medical malpractice claim if the 
resulting harm did not accrue for more than a year after the negligence.[5]
III. THE CASE LAW
¶21 Hospital argues that, pursuant to Tice, Plaintiff must show 
"active concealment" by Hospital to toll the § 156(B) limitation period, i.e., 
that Tice limited any tolling to that specific situation. We find no such 
limitation in Tice. At various points, Tice states that: "whenever 
the government acts to conceal from a prospective plaintiff the knowledge of the 
injury . . . then the obligation to present a claim does not accrue . . ." 
Tice, ¶ 30. At no time, however, does Tice state that tolling is 
available exclusively because of active concealment.
¶22 Examining Lavender, it is quite clear that the opinion allowed the 
hospital to be added as a defendant outside the § 156(B) notice period because 
"a substantial controversy exists as to whether [plaintiff] knew, or was able to 
discover with reasonable diligence, that a cause of action existed against 
Hospital stemming from the July 19, 2005, surgery any earlier than Nurse 
Winfrey's August 25, 2011, deposition." 2013 OK CIV APP 80, ¶ 26. 
Lavender thus states the conventional discovery rule of Hawk Wing v. 
Lorton, 2011 OK 42, ¶ 18, 261 P.3d 1122, and does not rely 
entirely on active concealment by the hospital.
¶23 We find the structure of § 156(B) and the accompanying case law indicate 
that a conventional discovery rule applies to medical malpractice cases brought 
against state entities. The record does not indicate that summary judgment was 
appropriate pursuant to such a rule. We therefore reverse the grant of summary 
judgment to Hospital.
IV. THE LIABILITY OF DR. KIRK.
¶24 The court also granted summary judgment to Dr. Kirk on the grounds that 
he was an employee of Hospital. Plaintiff requested a continuance pursuant to 
District Court Rule 13(d), seeking discovery on this question. The court did not 
mention this request in its judgment, and we find no record that it considered 
the Rule 13(d) request at all. The court apparently found the statement of 
employment made by affidavit in Dr. Kirk's motion to dismiss to be undisputed 
evidence, and that further discovery could not, as a matter of law, support any 
other conclusion.
¶25 Dr. Kirk's affidavit seeks to relieve him of personal liability in this 
matter, and is thus inherently self-interested. Its credibility should therefore 
be tested by a jury unless it is supported by other evidence. See Poafpybitty 
v. Skelly Oil Co., 1973 OK 
110, ¶ 17 517 P.2d 432. No 
other evidence was provided.[6] Although proper inquiry may eventually prove that 
Dr. Kirk is indeed an employee of Hospital, the established standards and 
procedures of summary judgment may not be circumvented by "converting" a motion 
to dismiss into a motion for summary judgment. If a court treats a motion to 
dismiss as a motion for summary judgment, it must apply the full forensic 
inquiry required by the summary judgment standards and procedure. We therefore 
vacate the grant of summary judgment to Dr. Kirk.
CONCLUSION
¶26 We find that the one-year period which § 156(B) provides to raise this 
claim of medical malpractice is tolled by the discovery rule, as stated in 
Hawk Wing v. Lorton, 2011 OK 
42, 261 P.3d 1122. The court 
did not consider this rule in granting summary judgment. The employment status 
of Dr. Kirk was demonstrated only by a self-interested affidavit that could not 
act as a basis for summary judgment. We therefore vacate both grants of summary 
judgment by the district court.

¶27 VACATED.

RAPP, P.J., and BARNES, J., concur.

FOOTNOTES

[1] The 
allegations of negligence do not encompass this first knee 
replacement.

[2] See 
Smith v. Westinghouse Elec. Corp., 1987 OK 3, n. 11, 732 P.2d 466.

[3] For 
example, in the following statutes of repose, the Legislature did not use the 
occurrence of loss or the date of injury as the triggering event: Title 46 O.S.2011 § 301 (foreclosure 
remedies limited to "seven (7) years from the date of the last maturing 
obligation secured by such mortgage"); 12 O.S.2011 §109 (tort action for 
deficiency in the design, planning, supervision or construction of an 
improvement to real property, "shall not be brought more than ten (10) years 
after substantial completion of such an improvement"); 71 O.S.2011 § 1-509 (civil suit 
pursuant to section 10 of Oklahoma Uniform Securities Act must be "commenced 
within one year after the violation occurred"); 60 O.S.2011 § 837 (action for 
failing to disclose real property defect shall be commenced "within two (2) 
years after the date of transfer of real property subject to this act") 
(emphasis added in all cases).

[4] We 
further note that government health care providers compete directly with 
private enterprises in this field. We find no public purpose in allowing 
state health-care providers to avoid legitimate but unaccrued claims while the 
private providers with whom they compete are subject to this 
liability.

[5] As a 
simple example, consider a GTCA health provider that negligently implants a 
heart valve so it will last only 14 months instead of the expected 20 years. The 
problem is not discovered until the valve fails. Did the Legislature intend to 
completely immunize such acts? We find no apparent service of a public purpose 
in such a restriction.

[6] 
Plaintiffs' petition alleged that Dr. Kirk may or may not be an employee. The 
affidavit alleges only that Dr. Kirk was "employed" by Hospital, but not that he 
was acting within the scope of his employment.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 95, 30 P.3d 1164, 72 OBJ 2225, TICE v. PENNINGTON
Discussed
 2013 OK CIV APP 80, 308 P.3d 1071, LAVENDER v. CRAIG GENERAL HOSPITAL
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 3, 732 P.2d 466, 58 OBJ 68, Smith v. Westinghouse Elec. Corp.
Discussed
 1957 OK 237, 316 P.2d 840, FLOWERS v. STANLEY
Discussed
 1995 OK 137, 910 P.2d 984, 66 OBJ 3904, Gallagher v. Enid Regional Hospital
Discussed
 1973 OK 110, 517 P.2d 432, POAFPYBITTY v. SKELLY OIL COMPANY
Discussed
 2003 OK 2, 63 P.3d 535, PELLEGRINO v. STATE EX REL. CAMERON UNIVERSITY
Discussed
 1996 OK 16, 913 P.2d 1303, 67 OBJ 536, Duncan v. City of Nichols Hills
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2011 OK 42, 261 P.3d 1122, HAWK WING v. LORTON
Discussed at Length
 2014 OK 86, 339 P.3d 870, EDWARDS v. CITY OF SALLISAW
Cited
 1997 OK 152, 951 P.2d 1079, 68 OBJ 4087, PICKENS v. TULSA METROPOLITAN MINISTRY
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 109, Limitation of Action to Recover Damages Arising from Design, Planning or Construction of Improvement to Real Property
Cited
Title 46. Mortgages
 Cite
Name
Level

 46 O.S. 301, Foreclosure and Mortgage Remedies - Limitations - Cessation of Lien - Extension Agreements - Notice
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 156, Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Discussed
 51 O.S. 152, Definitions
Cited
Title 60. Property
 Cite
Name
Level

 60 O.S. 837, Remedies - Recovery by Purchaser
Cited
Title 71. Securities
 Cite
Name
Level

 71 O.S. 1-509, Civil Liability
Cited